THOMAS M. HODGENS *vs.* FRANK M. SULLIVAN.

Suffolk.    March 14, 1911. — September 5, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Practice, Civil*, Variance, Conduct of trial: requests and rulings. *Pleading, Civil*, Variance. *Contract*, Construction, Performance and breach. *Evidence*, Relevancy and materiality.

At the trial of an action for breach of a contract in writing, it appeared that the contract provided that the defendant should deliver to the plaintiff a certain number of shares "of the capital stock of a company formed or to be formed to take over" certain property, "above company to be known as the East Butte Mining Company. In case of failure of these properties being sold as at present agreed this agreement to be null and void." There was evidence that when the contract was signed a corporation had been formed by the defendant under

the laws of Arizona named the East Butte Copper Mining Company, that nego-
tiations were being had with a Boston firm of stockbrokers to handle the enter-
prise for the defendant, and that they proposed to organize a new corporation
under the laws of the State of Maine to be named the East Butte Mining Com-
pany; that the Boston firm finally refused further consideration of the matter;
that the Arizona corporation was known as the " East Butte Mining Company "
and as " East Butte," and that the defendant had admitted in substance that
the Arizona corporation was the corporation referred to in the contract. The
plaintiff had demanded from the defendant shares in the Arizona corporation,
and the defendant's refusal to comply with that demand was the breach of the
contract assigned in the declaration. The defendant asked for a ruling, that
the fact, that the evidence showed that the plaintiff had demanded shares of
the East Butte Copper Mining Company instead of shares of the " East Butte
Mining Company " which the contract called for, constituted a variance fatal
to the maintenance of the action. The presiding judge refused to make this
ruling. *Held,* that the refusal was warranted by the evidence.

In an action for the breach of a contract in writing, it appeared that the provisions
of the contract were as follows: " For and in consideration of the surrender
of a certain agreement . . . signed by W in regard to the payment of a com-
mission, . . . I [the defendant] hereby agree to deliver to [the plaintiff] two
thousand shares of the capital stock of a company formed or to be formed to
take over said property. Said stock to be delivered as soon as issued; . . .
above company to be known as East Butte Mining Company. In case of
failure of these properties being sold as at present agreed this agreement to be
null and void." At the trial of the action there was conflicting evidence as to
the meaning of the words " as at present agreed," and the presiding judge under
proper instructions left to the jury as a question of fact the determination of
the question, what agreement was referred to by those words. *Held,* that the
contract was ambiguous and that the action of the judge was proper.

In an action for the breach of a contract in writing, it appeared that the provisions
of the contract were as follows: " For and in consideration of the surrender
of a certain agreement . . . signed by W in regard to the payment of a com-
mission, . . . I [the defendant] hereby agree to deliver to [the plaintiff] two
thousand shares of the capital stock of a company formed or to be formed to
take over said property. Said stock to be delivered as soon as issued; . . .
above company to be known as East Butte Mining Company. In case of fail-
ure of these properties being sold as at present agreed this agreement to be null
and void." The defendant asked for and the presiding judge refused a ruling
to the effect that, if the contract had become " null and void " because the
properties had not been conveyed " as at present agreed," then the plaintiff was
in the same position with reference to his rights under the agreement with W
as he was before he surrendered them. *Held,* that the refusal was proper, the
ruling asked for not being germane to the issue being tried.

In an action for the breach of a contract in writing, it appeared that the provisions
of the contract were as follows: " For and in consideration of the surrender
of a certain agreement . . . signed by W in regard to the payment of a com-
mission, . . . I [the defendant] hereby agree to deliver to [the plaintiff] two
thousand shares of the capital stock of a company formed or to be formed
to take over said property. Said stock to be delivered as soon as issued; . . .
above company to be known as East Butte Mining Company. In case of fail-
ure of these properties being sold as at present agreed this agreement to be
null and void." There was evidence tending to show that at the time the

agreement was made the defendant had formed a corporation under the laws of Arizona called the East Butte Copper Mining Company, that he had entered into negotiations with a firm of stockbrokers in Boston, who had proposed to organize a corporation under the laws of the State of Maine to be called the East Butte Mining Company and to be controlled by them, which negotiations were pending when the contract sued on was made, that later those negotiations had fallen through, when the defendant entered into negotiations with a second firm of Boston stockbrokers, who undertook the defendant's enterprise through the use of the corporation he already had formed. The plaintiff demanded and the defendant refused to deliver shares in the Arizona corporation. The defendant contended that the words in the contract, "In case of failure of these properties being sold as at present agreed" referred to the negotiations with the first Boston firm, and that, they having fallen through, the contract according to its terms became "null and void," and he offered and the presiding judge refused to admit evidence tending to show that responsible persons had been ready to furnish money needed for the enterprise if the report of the first Boston firm and their mining expert were satisfactory, and had furnished a part of it, and also evidence as to a pooling of the stock of the Arizona corporation and as to expenses incurred by the defendant between the time when negotiations with the first Boston firm were discontinued and those with the second firm were completed. *Held,* that the evidence rightly was excluded as immaterial.

MORTON, J. This is an action to recover damages for a breach of the following contract:

"December 6, 1905.

"For and in consideration of the surrender of a certain agreement dated October 13, 1905, signed by Pat. Wall in regard to the payment of a commission of $20,000 on the sale of the Dutton Oneida Group I hereby agree to deliver to T. M. Hodgens two thousand shares of the capital stock of a company formed or to be formed to take over said property, said stock to be delivered as soon as issued and to be fully paid up and no further payment will be required thereon from T. M. Hodgens, the receipt whereof is hereby acknowledged of the agreement above described; above company to be known as the East Butte Mining Company. In case of failure of these properties being sold as at present agreed this agreement to be null and void.

"(Signed)　　Frank M. Sullivan."

There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the presiding judge * to give certain rulings that were asked for and to the exclusion of certain evidence.

_____

* *White,* J.

There was evidence tending to show that the plaintiff had assisted the defendant and Wall in procuring options on certain mining properties known as the Dutton Oneida group; that for services so rendered he was to receive a commission of $20,000 on the sale of the properties, and that he had a written agreement to that effect with Wall; that the defendant represented to him that he had "considerable more money" to pay before he could put through the deal and that he wanted him to take in lieu of the cash commission two thousand shares in a company to be known as the East Butte Mining Company, with the privilege of subscribing for two thousand shares more on the payment of five dollars a share; that he was certain that "the thing would go through all right and that he would make eventually perhaps the full amount of $20,000"; that the plaintiff consented and thereupon the agreement in suit was signed by the defendant; — the last part, beginning with the words "above company" being written by the defendant and the rest by the plaintiff. There was also evidence tending to show that previous to the execution of the agreement in suit a corporation had been organized under the laws of Arizona, with the name of the East Butte Copper Mining Company, by Sullivan and Wall with the assistance of one Bernard Noon, a lawyer in Butte, to which it was proposed to transfer these properties, and that after the options were secured and the corporation organized Sullivan went East to get some one to handle the matter for them and had negotiations with a firm of Boston brokers, Hayden, Stone and Company, who proposed to organize a corporation of their own under the laws of Maine, with the name of the East Butte Mining Company, to be controlled by them. These negotiations fell through and the properties eventually were conveyed through a deal made by Sullivan with another firm of Boston brokers, Paine, Webber and Company, to the East Butte Copper Mining Company, the corporation which had been organized as aforesaid by Sullivan and Wall with the assistance of Noon to take them over if the necessary financial backing could be obtained. The plaintiff asserted that he was entitled under the contract to two thousand shares of stock in the East Butte Copper Mining Company to which the properties were thus conveyed, and duly demanded the same, but the shares never were delivered to him.

No corporation ever was formed, so far as appears, under the name of the East Butte Mining Company, for the purpose of taking over said properties. The only corporation that was organized for that purpose was the East Butte Copper Mining Company to which, as already stated, they eventually were conveyed.

There was evidence tending to show that the negotiations between Sullivan, and Hayden, Stone and Company, were pending at the time of the execution of the contract in suit, and one contention of the defendant is that the phrase, "as at present agreed," in the concluding sentence of the contract, referred to the negotiations with Hayden, Stone and Company, and that, inasmuch as those fell through, the contract became, as expressly provided, "null and void."

The other contention is that the shares to be delivered were shares in the company to be known as the East Butte Mining Company, and that the shares that were demanded and to which the plaintiff claims to have been entitled were shares in the East Butte Copper Mining Company. The defendant contended that this constituted a fatal variance and asked the presiding judge so to rule, which the judge declined to do subject to his exception. In regard to this exception it is to be observed that there was evidence tending to show that the East Butte Copper Mining Company was also known as the East Butte Mining Company and as the East Butte. Under the circumstances the alleged variance might well have been regarded by the presiding judge, as appears to have been done, as immaterial. The case stands differently from what it would have stood if there had been two companies, one named the East Butte Copper Mining Company and the other the East Butte Mining Company. There was also evidence which, if believed, warranted the jury in finding that the defendant had himself admitted in substance and effect that the East Butte Copper Mining Company was the company in which the plaintiff was entitled to shares under the contract. It would have been error, therefore, for the judge to instruct the jury, as variously requested by the defendant, that the demand for shares in the East Butte Copper Mining Company constituted a fatal variance, or that the plaintiff was not entitled under the contract to shares in that company.

In regard to the other contention of the defendant the plaintiff contends that the phrase in question referred not to the negotiations with Hayden, Stone and Company but to the general agreement and understanding between the parties whereby options were to be procured and the properties disposed of to whomsoever might be induced to purchase them.

The contract being ambiguous, evidence of the conditions and circumstances under which it was entered into and of the facts relating to it were properly admitted for the purpose of ascertaining if possible the true meaning of the language used by the parties. *Strong* v. *Carver Cotton Gin Co.* 197 Mass. 53, 59. And it was for the jury to find as a fact under suitable instructions from the presiding judge what the agreement referred to was. This question was submitted to the jury under instructions that were not objected to and in which we discover no error. So far as the instructions requested should have been given, they were included in and covered by the charge. If the contract became " null and void" because the properties were not conveyed " as at present agreed," it was immaterial what the rights, if any, of the plaintiff were under the contract between him and Pat. Wall which had been given up when the contract in suit was signed, and the instructions relating thereto were properly refused.*

Evidence was offered by the defendant in connection with the proposed Hayden, Stone and Company deal that responsible parties were ready to furnish the money called for if the report to Hayden, Stone and Company of their mining expert was satisfactory, and had furnished a part of it, and was excluded, and we think rightly. It had no tendency to show what the agreement referred to was and was not material for any other purpose.

---

* The rulings requested were as follows : " 12. If the contract sued on is null and void because of the failure of the properties mentioned being sold ' as at present' agreed, then the parties are placed in the same position they were at the time the contract was signed, and the plaintiff would be entitled to all of his rights under the agreement dated October 13, 1905, signed by Patrick Wall."

" 16. If the contract sued on is null and void there is no consideration for the surrender of the Wall agreement by the plaintiff and he will be in the same position with reference to his rights under that agreement as he was before he attempted to surrender them."

We also think that the evidence that was offered as to the pooling of the stock * in ninety days and that there were additional expenses between December 12, when Hayden, Stone and Company decided to go no further with the deal, and the time when the Paine, Webber and Company deal was entered into, was rightly excluded.   It had nothing to do with the main question in the case, which was, what was the agreement referred to in the phrase "as at present agreed."

The other exceptions relating to matters of evidence have not been argued and we treat them as waived.

*Exceptions overruled.*

*C. E. Hellier,* (*W. P. Everts* with him,) for the defendant.
*O. Storer,* for the plaintiff.

---

* The question here referred to was addressed to one Paine of the firm of Paine, Webber and Company and was as follows: "Did you, representing the East Butte Copper Mining Company ever accept any subscriptions of stock in which there was the provision that the stock should be pooled for the term of ninety days?"