GOLDEN v. POPPER SHOE CORPORATION.

Civ. No. 8686.

United States District Court D. Massachusetts.

Nov. 17, 1950.

Maurice Palais, Boston, Mass., for plaintiff.

Guterman & Guterman and Harold Horvitz, all of Boston, Mass., for defendant.

FORD, District Judge.

This is an action for breach of contract brought by plaintiff, Robert E. Golden, a citizen of Massachusetts, doing business in Boston under the name of "Robert's Shoes" against the Popper Shoe Corpn., a Maryland corporation doing business in Massachusetts, where it sells shoes at retail on the premises of a Boston department store known as "Raymond's." Defendant has moved for summary judgment.

The facts appear from the pleadings, answers of both parties to interrogatories, and the deposition of plaintiff. The following facts appear to be undisputed. Golden operates a retail shoe store, and had obtained an agency from the American Girl Shoe Company for the retail sale of its shoes, nationally advertised under the name of "American Girl". The sale of such shoes constituted a principal part of his business. In February of 1949, plaintiff offered to sell to defendant a lot of shoes of discontinued styles and by various manufacturers, including a large proportion of "American Girl" shoes. One Aresty, an agent of defendant, visited plaintiff's store, examined the shoes and discussed terms of the sale. On February 7, 1949, the shoes were sold by plaintiff to defendant. At the time of the sale, Aresty wrote out on plaintiff's stationery the following document:

"Feb. 7, 1949

Sold to

The Popper Shoe Corp.
356 Washington St.,
Boston, Mass.

Approx. 825 prs. American Girl, shoes, St. Louis

Wentham H·H Brown women's shoes @ $2.00 net per pair.

The name Robert's Shoes, Boston, Mass. is not to be used. These shoes to be advertised as some discontinued styles.

(Sgd) V. J. Aresty"

This was signed by Aresty and given to the plaintiff.

On February 9, 1949, at the time of the delivery of the shoes, the following document, on plaintiff's stationery and entirely in plaintiff's handwriting was delivered to defendant:

"Invoice    Terms—Net 10 days

The Popper Shoe Corp.
356 Washington St.
Boston, Mass.

843 pairs assorted shoes @ $2.00
—$1,686.00

Manufacturers { American Girl
Brown Shoe Co.
Menihan
Gilburn
M. Wolf
Kleven, etc.

Note—Robert's Shoes not to be used in advertising and to be advertised as discontinued styles."

On February 18, 1949, defendant caused an advertisement to be printed in a Boston newspaper under the heading "Sold to Raymond's", announcing a sale of some of these shoes. The shoes were described in

large type as including "Discontinued * * * American Girl Shoes." As a result of the appearance of this advertisement, the plaintiff's agency for "American Girl" shoes has been revoked.

The parties are not in agreement as to all of the facts of the negotiations preliminary to the sale of the shoes. In particular, plaintiff claims, and defendant denies, that it was orally agreed by Golden and Aresty that a condition of the sale was that the name "American Girl" was not to be used in advertising in connection with defendant's resale of the shoes. The gist of plaintiff's case seems to be that this alleged agreement was violated by the advertisement of February 18, 1949, as a result of which he lost his agency for "American Girl" shoes.

Defendant's position in moving for summary judgment is that the documents drawn up on February 7 and 9 constituted an integrated expression of the contract between the parties. In this written contract, it argues, there is no express agreement not to use the name "American Girl" in its advertising, and since such use of this name is the only act which plaintiff claims to be in violation of the contract, there was clearly no breach, and defendant is entitled to judgment. As to the dispute as to the facts of the oral negotiations between Golden and Aresty, defendant contends that since there is an integrated written contract, then, by virtue of the so-called parol evidence rule, these facts cannot vary nor add to the terms of the written contract. If this is so, then the question of fact as to the alleged oral promise not to use the name "American Girl" is immaterial and hence no bar to the granting of summary judgment.

But even if it be assumed that defendant is correct in its view that there is an integrated written contract, and that the parol evidence rule is applicable, there is another aspect of the case to be considered. Plaintiff contends that even if there is a written contract, it is ambiguous and hence it is necessary to consider extrinsic facts in order to arrive at the correct interpretation. This contention appears to have merit.

The written contract, if there i one, includes as a condition of the contrac a provision that the shoes are "to be ad vertised as some discontinued styles." (Th version in Aresty's handwriting omits th word "some" but this seems to make no sub stantial difference for the purposes of th present case.) This expression is fairl susceptible of more than one meaning. I could mean that defendant assumed the ob ligation of stating positively in its adver tising that the shoes were of discontinued styles, and was then free to add any fur ther description it wished, excluding, o course, all use of the name "Robert' Shoes". Or it could mean that defendan undertook to represent the shoes only a "discontinued styles", adding nothing mor by way of description, thus in effect ex cluding reference to the trade name or th manufacturer. Where the words of th written contract are thus open to more than one interpretation, the true meaning which the parties intended to give to these word must be gathered from the circumstance under which the agreement was made an the purposes which the parties intended to achieve by the inclusion in the contract o the provision in question. Evidence as to what occurred in the course of the negotia tions leading up to the formation of th written contract may be highly relevant on this aspect of the case. Such evidence is not excluded by the parol evidence rule where the purpose for introducing it is not to change nor add to the terms of the written contract, but merely to clear up the uncer tainty as to what the provisions of the written contract mean. 3 Williston on Contracts § 629; McClintic-Marshall Co. v. Freedman, 274 Mass. 558, 563, 175 N.E. 55; Hodgens v. Sullivan, 209 Mass. 533, 538, 95 N.E. 969.

Thus, even if the writings previously referred to constitute a written contract, the events preceding the sale of the shoes may be of material importance to the final decision of this case. As to these events there is a genuine controversy of fact between the parties, and hence this case is not a proper one for summary judgment.

Motion for summary judgment denied.