DECISION
Before this Court is a request for declaratory relief by the Vincent Company, n/k/a H.V. Collins Company (hereinafter "plaintiff"). The plaintiff asks this Court to declare that the defendants, First National Supermarkets (hereinafter "FNS") and Roger Williams Food, Inc. (hereinafter "RWF"), owe percentage rent to the plaintiff pursuant to Section 18 of the Separate Rent Agreement between the plaintiff and FNS. Jurisdiction is pursuant to R.I.G.L. 1956 (1985 Reenactment) § 9-30-1 et. seq.
Facts
The parties stipulated to the following facts. On September 18, 1963, Forest-Pleasant Realty Trust, the original lessor, entered into a Prime Lease and Separate Rent Agreement with FNS to lease a supermarket located in Attleboro, Massachusetts. The Vincent Company became successor to Forrest-Pleasant Realty Trust's interest in the property, and ultimately H.V. Collins Company became the current lessor. The Prime Lease established a rental term of fifteen years with six options to extend for successive periods of five years for a total possible lease period of up to forty-five years. The Separate Rent Agreement, which is subject to the Prime Lease, provides for a minimum rental payment of Twenty-Eight Thousand Nine Hundred Thirty Dollars ($28,930.00) per year and a percentage rental payment of one percent of gross sales that exceed One Million Nine Hundred Thirty Thousand Dollars ($1,930,000.00) in a one year period.
FNS took occupancy of the premises on June 1, 1964 and continuously operated a supermarket until July 26, 1980. During FNS' tenancy, all rental and percentage rate payments were paid to the plaintiff through December 31, 1979. Also, FNS delivered a "Statement of Gross Sales" to the plaintiff through December 31, 1981 in accordance with Section 10 of the Separate Rent Agreement.
On January 23, 1981, FNS and RWF entered into a Sublease Agreement. Under this initial agreement, RWF and FNS agreed that the payment of minimum rent and/or percentage rent to the plaintiff would be the responsibility of FNS, and RWF agreed to furnish all reports of sales, certificates of insurance and other documents to FNS. The minimum rent paid by RWF to FNS was Sixty-Five Thousand One Hundred Seventy-Seven and 98/100 Dollars ($65,177.98) per year. Further, RWF was obligated to pay FNS a percentage rate equal to one percent of the amount of gross sales that exceeds Three Million Two Hundred Fifty-Eight Thousand Eight Hundred Ninety-Nine Dollars ($3,258,899.00) in a one year period.
On June 15, 1982, FNS and RWF amended the Sublease Agreement to "mirror" the provisions of the Prime Lease. The modifications included modifying RWF's obligation to pay minimum rent and percentage rent so that RWF's obligation would be identical to FNS' obligation under the Prime Lease.
Subsequent to the execution of the RWF Sublease, FNS failed to send the "Statement of Gross Sales" to the plaintiff for the calendar year ending December 31, 1982 or for any calendar year thereafter. On April 28, 1983, the plaintiff sent a letter to FNS indicating that they had not received any "Statements of Gross Sales." FNS responded on May 4, 1983, that it was not providing the plaintiff with said statement because FNS had sublet the premises to RWF and pursuant to Section 18 of the Separate Rental Agreement, in the event of a sublease, the entire percentage rent provision of the lease becomes inoperative; thus, "no report is due for that period." On May 24, 1983, the plaintiff responded that it did not agree with FNS' interpretation of Section 18 of the Rental Agreement. Thereafter, on October 30, 1984, the plaintiff filed this declaratory judgment.
Pursuant to the Uniform Declaratory Judgment Act, this Court has the power to construe for any interested person a question of construction arising under a contract. G.L. § 9-30-1, 9-30-2. Accordingly, the parties to this action have asked this Court to construe Section 18 of the Separate Rent Agreement. Since the parties have agreed that Massachusetts law will apply, the Court will interpret the contract under the laws of the Commonwealth of Massachusetts.
Section 18 of the Separate Rental Agreement states that
 Notwithstanding anything to the contrary herein contained or contained in the lease of which this Separate Rent Agreement is a part, percentage rent provisions herein contained shall not be in force or applicable in the event Lessee shall assign this lease or sublet the demised premises to other than a wholly-owned subsidiary or successor corporation
or in the event Lessee ceases to operate or carry on its business in said demised premises, or in the event that the said premises cease to be operated as a supermarket or for supermarket purposes. In any such event, the only sums payable under this Separate Rent Agreement and the lease of which it is part shall be the so-called minimum rent and also, if any are payable, increase in taxes and maintenance charges, all as set forth in this Separate Rent Agreement. (emphasis added)
Said another way, the three events which result in the termination of FNS' percentage rent obligation are
 (1) in the event Lessee shall assign this lease or sublet the demised premises to other than a wholly-owned subsidiary or successor corporation; or
 (2) in the event Lessee ceases to operate or carry on its business in said demised premises; or
 (3) in the event that the premises cease to be operated as a supermarket or for supermarket purposes.
The plaintiff contends that FNS is contractually obligated to pay percentage rent despite FNS' Sublease Agreement with RWF. Specifically, the plaintiff states that Section 18 is inherently ambiguous because each of the three aforementioned events listed in Section 18, which would relieve FNS of its duty to pay percentage rent, contradict the other, and thus fail to have an identifiable meaning.
Alternatively, defendants FNS and RWF argue that Section 18 is clear and unambiguous and does not require the payment of percentage rent. Since RWF is not a "wholly-owned subsidiary or successor corporation" of FNS, FNS states that the Sublease Agreement in effect abolishes FNS' obligation to pay percentage rent to the plaintiff. This Court agrees.
It is well-established contract law that a court may not create a new contract for the parties or rewrite the contract under the guise of construction. City of New Orleans v. NewOrleans Waterworks Co., 142 U.S. 79, 35 L.Ed 943, 12 S.Ct. 142 (1891). However, if the words of a contract are plain and unambiguous, they must be construed in accordance with their ordinary and usual senses. Edwin R. Sage Co. v. Foley, 12 Mass. App. 20 (1981). Only when the words of a contract are ambiguous and open to more than one interpretation may the court look to the circumstances under which the agreement was made to find the true meaning which the parties intended to give each word.Golden v. Popper Shoe Corp., 94 F. Supp. 100 (D.C. Mass. 1951). The intent of the parties, however, is irrelevant when a contract is unambiguous. Fairfield 274-278 Clarendon Trust v. Dwek,970 F.2d 990, 994 (1st Cir. 1992). "Absent fraud or mistake, an agreement is presumed to express the intent of the parties."Id. at 993, (citing Hess Oil Chemical Corp. v. Ristuccia,3 Mass. App. Ct. 772, 772, 33 N.E.2d 823, 823 (1975)). In the instant case, this Court need not look to the intent of the parties as the words of Section 18 are clear and unambiguous and no fraud or mistake is alleged.
Section 18 of the Separate Rent Agreement clearly states three separate independent events that would abolish FNS' duty to pay percentage rent. While the plaintiff contends that the three independent events mentioned in Section 18 overlap, contradict, and produce a confused interpretation, this Court is satisfied, after a careful review of the language, that the three events that would result in termination of FNS' percentage rent obligation are uncontradictory and furthermore, FNS has met the first of these conditions.
First and most relevant, percentage rent is not owed to the plaintiff if FNS sublets to another corporation that is not a wholly-owned subsidiary or successor corporation of FNS. Since FNS sublet the premises to RWF, which is not a wholly-owned subsidiary of FNS, only the minimum rent, increase in taxes, and maintenance charges are owned to the plaintiff. Moreover, the placement of the conjunctive word "or", which is "used to express an alternative or to give a choice of one among two or three things," BLACK'S LAW DICTIONARY 1095 (6th Ed. 1990), within Section 18, between the three events, further indicates that they are separate and independent circumstances that if satisfied would each abolish the percentage rent requirement.
Accordingly, FNS and RWF have satisfied their contractual obligation by paying the plaintiff the minimum rent, increase in taxes, and maintenance charges when due. Since percentage rent is not owed to the plaintiff, the Court will not address the issues of waiver and estoppel. Also, pursuant to G.L. 1956 (1985 Reenactment) 9-30-10, costs and attorney fees are denied to all parties.
For the foregoing reasons, this Court declares that pursuant to Section 18 of the Separate Rent Agreement there is no obligation on the part of FNS or RWF to pay percentage rent to the plaintiff.
Counsel shall prepare the appropriate order for entry.