PAUL W. HILLER *vs.* SUBMARINE SIGNAL COMPANY.

Suffolk. November 8, 1949. — March 31, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Contract,* Construction, Of employment, Implied.

Under a provision of a contract in writing between an agent for a manufacturer of certain maritime apparatus which was leased to customers subject to later purchase, that the agent should receive a certain commission "during the life of" his contract "on the received . . . rentals derived from leases" obtained by him, the agent was not entitled to a commission on rentals paid after the termination of his contract although they were paid under leases negotiated by him before such termination.

Under provisions of a contract between a manufacturer of maritime apparatus and an agent that the agent should "generally use his best endeavors to promote and protect the business of the company," that

he should "become entitled to commissions . . . [in a stated percentage of the sales prices of apparatus] only if and when and to the extent to which the payments on account of the purchase of apparatus are actually collected and received," and that his agency should not "apply" to vessels owned, controlled or operated by any department of the United States government, the agent was not entitled to recover on quantum meruit for promotional work which could have been found to have resulted in sales of apparatus installed on vessels constructed for the United States maritime commission.

BILL IN EQUITY, filed in the Superior Court on September 11, 1941.

The suit was heard by *Morton,* J.

*J. A. Daly,* for the plaintiff.

*P. B. Buzzell,* for the defendant.

WILLIAMS, J. This is a bill in equity for an accounting of commissions alleged to be due the plaintiff as sales representative of the defendant, a corporation engaged in the manufacture and sale of maritime apparatus and equipment. The plaintiff was employed from December 1, 1932, until January 8, 1941, under a written contract of employment which provided that his "representation shall apply in respect of shipping to all ships (other than those owned, controlled or operated by any department of the United States government) which are owned or chartered by persons, firms, or corporations having their head offices in Wilmington and San Pedro, California . . . ." By a letter from the defendant dated January 13, 1933, the territory of the plaintiff was somewhat extended, and in another letter of the same date he was advised that "As regards Newport Bay and San Diego, we have no representative in mind at present whom we wish to handle this territory. Pending the appointment of a representative for this territory, we should be glad to allow you the same commission as stipulated in your contract on any business which you may be able to obtain in these two ports." In reference to compensation the contract provided that "During the life of this contract the company shall pay the representative a commission of five (5%) per cent of the sale price of such apparatus . . . . It is agreed that the representative shall

become entitled to commissions as provided in this paragraph only if and when and to the extent to which the payments on account of the purchase of apparatus are actually collected and received."

A substantial part of the defendant's business on the Pacific coast consisted in the manufacture and sale of "Fathometers" for vessels engaged in tuna fishing. Because of the cost of this apparatus few, if any, sales were being made. After the execution of the plaintiff's contract the defendant changed its method of selling this apparatus by arranging to lease the equipment at a rental of $60 a month and to give the lessee an option to purchase the apparatus at a stated price within a period of three years. After this change the plaintiff's contract was modified by a letter dated December 31, 1934, which read: "We are proposing . . . to pay you during the life of your contract a commission of 5% on the received Fathometer rentals derived from leases you obtain in your territory computable twice each year, December 31st and June 30th. If a sale develops from any of these leased apparatus we will, of course, pay you 5% commission of the sales price after payment is received, deducting therefrom the commission already paid you on the relevant rentals." Prior to the termination of his duties as representative in the Newport Bay-San Diego area which occurred on January 1, 1938, the plaintiff had negotiated leases on twenty vessels in that area, and prior to January 8, 1941, had negotiated leases on fifteen vessels in his regular area. After December 7, 1941, the United States navy took over by charter or purchase many of the boats which had been equipped with the defendant's Fathometers during the plaintiff's "representation," and thereafter purchased the leased equipment from the defendant. During the term of his employment the plaintiff did promotional work which could be found to have eventually resulted in sales of apparatus installed on vessels constructed by two large shipyards in the Pacific area for the United States maritime commission.

The plaintiff contends that: "I. He is entitled to com-

missions on all rentals received from leases of apparatus procured by him before January 8, 1941. II. In any event he has not been fully paid for rentals received prior to January 8, 1941. III. He is entitled to commissions on sales of Fathometers taken over by the navy. IV. He is entitled to compensation for the fair value of his work with the shipyards." It is undisputed that the defendant owes the plaintiff for commissions earned prior to the termination of the contract in the sum of $352.49. This amount has been tendered by check and has been refused by the plaintiff. It is also undisputed that a commission amounting to $91.29 has been overlooked by the defendant and is due the plaintiff.

The case was submitted to a judge of the Superior Court on an agreement as to certain facts, certain exhibits in the form of written documents, and a deposition by the plaintiff. Schedules of sales and leases with dates and prices are included in the record. The judge made findings of material facts; that pertaining to the fourth contention of the plaintiff being as follows: "He contends . . . that he is entitled to recover on quantum meruit for the services performed by him of value to the defendant. There was no express contract between the parties that he should be paid for such service, and I find and rule, on all the evidence, that there was no implied contract to pay the same. The contract itself provides in the seventh paragraph thereof that the plaintiff, among other things, 'shall generally use his best endeavors to promote and protect the business of the company.'" The judge found that the plaintiff was entitled to be paid $443.78 with interest on the sum of $91.29 from September 11, 1941, the date of filing the bill of complaint, and for costs. A decree was entered for the plaintiff in accordance with the findings, from which decree the plaintiff has appealed.

We find no ambiguities in the terms of the written contract nor in the language of the letters modifying it. There are no obscure words requiring explanation. *Glackin* v. *Bennett*, 226 Mass. 316, 320. The construction of a written

contract which is plain in its terms and free from ambiguity presents a question of law for the court. *Waldstein* v. *Dooskin*, 220 Mass. 232, 235. As to sales of apparatus it is stipulated by the parties that "during the life of this contract" the defendant shall pay commissions — to which the plaintiff "shall become entitled . . . only if and when and to the extent to which the payments on account of the purchase of apparatus are actually collected and received."

Concerning the rentals of Fathometers it is proposed in the letter of December 31, 1934, "to pay . . . during the life of your contract" commissions on rentals from leases, and if a sale of the leased apparatus develops, a commission on the sales price after payment is received, "deducting therefrom the commission already paid you on the relevant rentals."

It is clear that the obligation of the defendant to pay commissions was limited in time to "the life of this contract" and in amount to a percentage of moneys actually received.

The plaintiff is not entitled to commissions on rentals from leases previously contracted by him but which rentals were received after January 8, 1941, or, in the territory of Newport Bay and San Diego, after January 1, 1938. The parties are bound by the plain terms of their contract. *Gaston* v. *Gordon*, 208 Mass. 265, 269. *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 472. *Mechaber* v. *Pittle*, 270 Mass. 193, 198. Where as here its terms are openly and fairly arrived at enforcement will not be denied because of hardship to one of the parties. *Gaston* v. *Gordon*, 208 Mass. 265, 269. *Bowker* v. *Torrey*, 211 Mass. 282, 287. *Nickerson* v. *Bridges*, 216 Mass. 416, 421.

Sales of equipment for ships "owned, controlled or operated by any department of the United States government" were expressly excluded from the contract. There is therefore nothing in the plaintiff's third contention. This provision of the contract also is sufficient to dispose of the plaintiff's fourth contention. In addition the judge has found that the services were rendered without any implication that they should be paid for. This finding was based

upon the written deposition of the plaintiff. We stand in the same position as the trial judge and are unaffected by his finding. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 142–143. *Berry* v. *Kyes,* 304 Mass. 56, 57. We arrive at the same conclusion.

There was no error in the decree and it is affirmed with costs.

*So ordered.*