This certifies that this is the opinion of the Appellate Division in this cause.

Patricia D. Minotti, Clerk

**Charles L. PRESCOTT**

vs.

**LYON METAL PRODUCTS, INC.**

**No. 325**

District Court/Norfolk, ss.
Appellate Division/Southern District
Trial Court of the
Commonwealth of Massachusetts

**February 2, 1983**

**Albert Auburn, Esquire,** counsel for plaintiff.
**Patrick T. Jones, Esquire,** counsel for defendant.

### DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Southern District sitting at Orleans upon Report from the District Court Department, Dedham Division and it is found and decided that there was no prejudicial error.

It is hereby ORDERED: That the Clerk of the District Court Department, Dedham Division make the following entry in said case on the docket of said Court, namely: REPORT DISMISSED.

Opinion filed herewith.

Robert A. Welsh, Presiding Justice
Richard O. Staff, Justice
Milton R. Silva, Justice

Patricia D. Minotti, Clerk

### OPINION

**Welsh, J.** This is a civil action based upon an account annexed for certain commissions alleged to be due by reason

of the plaintiff's services to the defendant as a salesman.

The court found for the defendant.

There was evidence tending to show the following:

On or about October 18, 1971, the plaintiff and defendant entered into a contract of employment whereby the plaintiff was engaged as a sales representative for the defendant's line of metal furniture, lockers and other products. The defendant was to receive a salary, originally $8400.00 per year and subsequently $10,000.00 per year, as well as commissions based upon certain bonus volume credits accruing on business he obtained for the company. The method of determining the bonus volume credits, and consequently, the commissions due was based on a complex formula to which both parties assented. The precise mechanism for determination need not detain us since it is agreed that the amount to be awarded the plaintiff if he is determined to be entitled thereto is $10,622.64. Suffice it to say that the policy was structured by the defendant so as to encourage the salesmen to devote their primary efforts at making sales to dealers rather than to direct customers. The commercial motive for this preference is the fact that the dealer sales can usually be shipped within 10 days from inventory available and are less uncertain as to the date for delivery. In contrast, direct customers, consisting primarily of contractors in construction projects, often delay the requested shipment and generally make such accounts more troublesome to administer from the defendant's viewpoint. Although the defendant accepted orders from direct customers, it made it clear to its sales representatives that they ought to concentrate on the dealer sales.

Although the plaintiff was the leading salesman in direct sales volume he was the least effective in dealer sales. Despite being reminded on occasion by his supervisors of the policy of preference for dealer sales over direct sales, the plaintiff persisted in concentrating on direct sales.

[the defendant] became disenchanted and [ultimately] duly notified to terminate the plaintiff's services.

[The] area of controversy in this case is whether or not the defendant is entitled to commissions occurring on orders which he obtained prior to his termination, but which were not shipped to customers until after delivery. The evidence shows that the plaintiff received a commission of $5,000.00 based upon orders that his predecessor had written but which had not been shipped until after the plaintiff had assumed his position. The evidence further tended to show that the commissions which are in issue in this action were paid by the company to the salesman who was the plaintiff's successor. The written contract of employment specifies that no bonus credit will be allowed for goods not shipped until after termination of employment of the salesman, regardless of when any disputed order was obtained or claimed to have been obtained. There was evidence that the plaintiff was aware of the bonus credit policy and was reminded of it on occasion by his superiors.

[None] of the original shipping dates [was] prior to the plaintiff's termination: [all were] afterward. As to those that were [past termination] and rescheduled after [termination], the change in shipping date was due either to inability of the buyer to accept delivery on the originally scheduled date or the inability by the defendant to fabricate specially ordered items in time for delivery on the original shipping date. This inability was engendered by the forced shut down of one of the defendant's ovens during the so called "energy crisis."

At the conclusion of the trial and before final argument, the plaintiff filed requests for rulings of law. He claims to be aggrieved by the denial of requests 2, 3, and 4, which are as follows:

2. The condition that the plaintiff be in the employ of the defendant in order for the plaintiff to be paid for his past earnings or commissions is

unenforceable, as it is a forfeiture of earnings, and is unconscionable and against public policy.

3. The condition that the plaintiff be in the employ of the defendant at the time shipments were made on sales made by the plaintiff in order for the plaintiff to be paid for his commissions is an unenforceable condition as it operates as a forfeiture of the plaintiff's earnings and is unconscionable and against public policy.

5. On all the evidence as a matter of law there must be a finding for the plaintiff.

1. The plaintiff-appellant contends in his brief and in oral argument that the defendant was guilty of bad faith in discharging the plaintiff and that he is entitled to recover as damages commissions based upon orders he obtained for the defendant but not shipped until after delivery. In support of this theory of recovery, he cites the case of **Gram v. Liberty Mutual Ins. Co.,** Mass. (1981).[1]

**Gram** holds that an at-will employee who is discharged without cause by his employer is entitled to recover damages based upon renewal commissions reasonably anticipated less an amount determined to be attributable to time and effort required to service the renewal accounts. **Id.** at 2300, 2301. **Gram** expanded the doctrine announced in the case of **Fortune v. National Cash Register Co.,** 373 Mass. 96 (1977), which recognized for the first time in this Commonwealth the right of an employee hired at will to recover damages from his former employer if he was found to have been wrongfully discharged in bad faith. **Id.** at 102. See: **Monge v. Beebe Rubber Co.,** 114 N.H. 130, 133, (1974). **Gram** holds that even in the absence of an improper motive for discharge, an at-will employee discharged without cause may recover for loss of compensation clearly related to the employee's past service.

**Gram, supra,** at 2300. This, of course, represents a growing recognition of a common law duty to compensate an at-will employee for losses incurred as a result of wrongful termination. But see, **Fenton v. Federal St. Bldg. Trust,** 310 Mass. 609, 612 (1942).

We think that reliance on the **Gram** and **Fortune** cases is misplaced. The complaint framed by the plaintiff did not seek damages for wrongful discarge or for bad-faith termination of employment. The case does not appear to have been tried in the trial court on that theory, but rather by mutual consent on the issue of whether or not the plaintiff was entitled to receive as compensation for his employment the commissions for sales not consummated by shipment or delivery at the time his employment ceased. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an Appellate Court for review of the acts of the trial judge." **Santa Maria v. Trotto,** 297 Mass. 442, 447 (1937); **Atlantic Building Corp. v. Whyte,** 341 Mass. 234, 236 (1960). The question of wrongful termination of employment and the entitlement to damages therefrom was neither reported by the trial judge nor made the subject of a request for ruling by the plaintiff. The duty of the Appellate Division is to deal with the questions reported and no others. **James J. Derba Inc. v. Hamilton Service, Inc.,** 355 Mass. 127, 130 (1969). The appeal brings before the Appellate Division rulings of law reported by the judge and, upon further appellate review, questions of law touching the action of the Appellate Division. **Gaston Electric Co. v. American Construction Co., Inc.** 336 Mass. 454, 456 (1957).

2. The trial judge was clearly correct in refusing to grant request number 5. Rarely can it be ruled in a case heard upon oral evidence that a party upon whom rests the burden of proof has sustained his burden as a matter of law. **Winchester v. Missin,** 278 Mass. 427, 428 (1932). The

---

[1] Mass. Adv. Sh. (1981) 2287; 429 N.E. 2d 21.

record in this case falls far short of establishing the plaintiff's entitlement to judgment in his favor as a matter of law.

The issue raised by requests 2 and 3 is whether or not the provision in the contract of employment limiting the plaintiff's entitlement to commissions on sales to goods shipped before his termination is unconscionable as a forfeiture of earnings and therefore unenforceable. We are of the opinion that the trial judge's refusal to rule that the contract provisions in issue were unconscionable was correct. It is axiomatic that an agreement openly and fairly arrived at between competent parties that does not violate public policy does not become unenforceable solely because in the final analysis one party gains and the other party does not. **Hiller v. Submarine Signal Co.**, 325 Mass. 546, 550 (1950). For example, in this case the plaintiff received a windfall when he commenced his employment which he apparently accepted without complaint.[2] His successor received a similar windfall. The choice of the shipping date as the event determining the accrural of the commission is neither irrational nor commercially unreasonable. Possibly an order for goods might be cancelled, changed or delayed by the customer because of unforeseen contingencies. The parties might competently agree in accordance with common understanding that a sale be consummated by shipment, or delivery before liability for a commission attached. **Cf. Tristram's Landing, Inc. v. Wait**, 367 Mass 622, 628-630 (1975). In the **Hiller** case, the event which triggered payment of the commissions was actual receipt of payment by the party employing the salesman for the goods sold. This clause was still upheld as not unconscionable. **Hiller, supra** at 550.

Finally, the argument that this clause works a forfeiture of commissions earned begs the question, because it assumes as a premise the very proposition to be established, namely, that the commissions were either actually or at the least conditionally the property of the plaintiff. The contractual language already discussed adequately disposes of this contention.

It is ORDERED that the report be, and hereby is, dismissed.

SO ORDERED
**Robert A. Welsh, Jr., P.J.**
**Richard O. Staff, J.**
**Milton R. Silva, J.**

This certifies that this is the opinion of the Appellate Division in this cause.

**Patricia D. Minotti, Clerk**

---

[2] There is no suggestion in this record that he offered to return this benefit. We do not intimate a different result if he had done so.