**FAIRFIELD 274–278 CLARENDON TRUST, et al., Plaintiffs, Appellees,**

v.

**Robert M. DWEK, Defendant, Appellant.**

**No. 91–1729.**

United States Court of Appeals, First Circuit.

Heard April 6, 1992.

Decided July 30, 1992.

---

Garry V. Inge with whom Nissen and Lumsden, Boston, Mass., was on brief, for defendant, appellant.

Neal M. Brown with whom Law Offices of Neal M. Brown, Boston, Mass., was on brief, for plaintiffs, appellees.

Before CYR, Circuit Judge, and COFFIN and CAMPBELL, Senior Circuit Judges.

CYR, Circuit Judge.

Following a two-day jury trial, the United States District Court for the District of Massachusetts entered judgment against appellant Robert Dwek awarding plaintiff-appellee Fairfield 274–278 Clarendon Trust ("Trust") $48,000 in damages for breach of contract.[1] We affirm.

## I

## BACKGROUND

On October 8, 1987, the Trust entered into a written agreement to sell Dwek an uncompleted condominium unit in Boston for $240,000. The agreement contemplated a $48,000 purchase money deposit the same day, to be retained by the Trust as liquidated damages in the event of a default by Dwek. Dwek did not make the deposit. There was evidence that the parties later agreed orally to a reduced deposit of $10,000 by Dwek, but there was no evidence of any agreement to alter the liquidated damage provision in the October 8 agreement. Dwek did not make the $10,000 deposit. Thereafter, the parties executed an undated handwritten agreement which called for the completion of the condominium unit and its resale to a third party. Dwek was to furnish the labor and materials, and profits or losses were to be shared. The handwritten agreement made reference to a formal document to be drawn and executed at a later date; it was never drafted. Dwek failed to comply with the handwritten agreement as well. Eventually, the condominium unit was sold to a third party for approximately $261,000.

## II

## DISCUSSION

Dwek raises four claims on appeal. First, he asserts that the court erred in instructing the jury that it *must* find that there had been a breach of the contract by Dwek, and award the Trust $48,000 in liquidated damages, *if* it were to find the October 8 agreement to have been the operative contract between the parties.[2] Second, Dwek asserts that the trial court erred in excluding his pretrial deposition. Third, he claims that the court made prejudicial comments to the jury regarding Dwek's unavailability at trial. Finally, Dwek contends

---

1. The complaint invoked diversity jurisdiction under 28 U.S.C. § 1332, alleging that Dwek was a New York resident, and the Trust a Massachusetts resident.

2. As there were no special verdicts, it is not absolutely certain which agreement the jury considered binding, nor precisely how damages were determined. We conclude, nonetheless, that the jury found the original October 8 agreement to have been the operative contract; it alone provided for liquidated damages in the amount of $48,000, and the court specifically instructed the jury that $48,000 was to be the amount awarded for its breach. *See Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987) (it is the "invariable assumption" of courts that a jury follows its instructions); *United States v. Aponte–Suarez*, 905 F.2d 483, 493 (1st Cir.) (same), *cert. denied,* — U.S. ——, 111 S.Ct. 531, 112 L.Ed.2d 541 (1990), *and cert. denied,* — U.S. ——, 111 S.Ct. 975, 112 L.Ed.2d 1061 (1991). Moreover, at oral argument Dwek agreed that the jury had found that he breached the October 8 agreement.

that the court committed reversible error by limiting cross-examination of the drafter of the October 8 agreement.

### 1. *Instruction on Liquidated Damages*

■ The trial court instructed the jury that it was free to find that the parties intended to be bound by the October 8 agreement, either in its original form or as modified by the later handwritten agreement. In the alternative, the jury was free to find that the handwritten agreement replaced the October 8 agreement. The court further instructed the jury that Dwek "broke either or both of those contracts insofar as that question is before you. There is no issue as to whether there was a breach or not. There was a breach." Finally, the jury was instructed that damages could be determined in various ways. If the jury were to find that Dwek breached the October 8 agreement, however, it was to award $48,000 in liquidated damages. Dwek contends that the district court misinstructed the jury on the meaning of the liquidated damage clause.[3]

The Standard Form Condominium Purchase and Sales Agreement executed on October 8, 1987, states that "[t]he agreed purchase price for said premises is Two Hundred Forty Thousand ($240,000)—dollars, of which $48,000.00 have been paid as a deposit this day...." Paragraph 22 then states that "[i]f the BUYER shall fail to fulfill the BUYER'S agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and such retention shall be Seller's sole remedy at law or in equity."

The district court ruled that interpretation of the October 8 agreement was a matter for the court and that it prescribed liquidated damages in the amount of $48,-000. Dwek contends that his failure to *deposit* the $48,000, as contemplated by the October 8 agreement, rendered the *liquidated damage provision ambiguous* because there was no deposit to be "retained by the SELLER as liquidated damages." Alternatively, he argues that the jury should have been permitted to determine that the parties intended, by virtue of their later oral agreement, that Dwek deposit $10,000, not $48,000.

■ "Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court." *Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir. 1981) (citing *Freedlander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786, 788 (1970)). Only if the contract is ambiguous is there an issue of fact for the jury. *Id.* (citing cases). Moreover, where the contract is unambiguous, it is to be enforced according to its terms. *Id.* (citing cases). Absent fraud or mistake, an agreement is presumed to express the intent of the parties, *Hess Oil & Chemical Corp. v. Ristuccia*, 3 Mass.App.Ct. 772, 772, 331 N.E.2d 823, 823 (1975) (agreement unambiguous as concerned obligation of defendants to pay one third of cost).

■ Evidence of prior or contemporaneous oral agreements cannot be admitted to *vary* or *modify* the terms of an unambiguous written contract. *New England Financial Resources, Inc. v. Coulouras*, 30 Mass.App.Ct. 140, 145, 566 N.E.2d 1136, 1139 (1991) (parol evidence rule precludes use of oral evidence to modify integrated agreement); *Aerostatic Engineering Corp. v. Szczawinski*, 1 Mass.App.Ct. 141, 143, 294 N.E.2d 521, 522 (1973) (oral agreement cannot modify payment terms unambiguously expressed in written contract).

---

3. Dwek explains that "[i]t is the instructions regarding breach and the amount of damages to award that [he] assigns as reversible error." He offers no authority and no argument to support the conclusory assertion that neither agreement was breached. The claim is therefore waived. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 351 n. 2 (1st Cir.1992) (issues adverted to in perfunctory fashion, unaccompanied by developed argumentation, deemed waived). In any event, the claim is without merit. The October 8 agreement required, *inter alia*, that the $192,-000 balance be paid at the time of the delivery of the deed, set for November 30, 1987. As Dwek concedes, he never paid anything. Alternatively, the handwritten resale agreement required Dwek "to provide all materials and subcontractors at his cost, to complete the unit as specified in the appropriate drawings. Estimated cost is $40,000." As Dwek concedes, he did not do so.

Instead, "parties are bound by the plain terms of their contract," *Hiller v. Submarine Signal Co.*, 325 Mass. 546, 550, 91 N.E.2d 667, 669 (1950) (limiting party to sales commission prescribed by plain terms of contract), and contemplation of the parties is not material where the agreement is unambiguous, *Blakeley v. Pilgrim Packing Co.*, 4 Mass.App.Ct. 19, 24, 340 N.E.2d 511, 514 (1976) (restrictive agreement between industrial park developer and park tenant interpreted according to meaning of unambiguous written agreement).

These interpretive principles lend support to our view of the October 8 agreement as an integrated contract whose unambiguous deposit and liquidated damage provisions were not subject to modification through resort to parol evidence. *New England Financial Resources*, 30 Mass.App.Ct. at 145, 566 N.E.2d at 1139 ("parol evidence rule precludes evidence of earlier or contemporaneous decisions that would modify the provisions of a later integrated agreement which the proponent of the agreement seeks to enforce"). The contract unambiguously established a $240,000 purchase price, "of which $48,000.00 have been paid as a deposit this day . . . ," and provided that "all deposits made hereunder by [Dwek] shall be retained by the [Trust] as liquidated damages. . . ."

As a practical matter, Dwek was inviting the district court to conform the terms of the *liquidated damage* provision to accommodate his *breach* of the *deposit* provision. Of course, as a logical matter the suggested disregard of Dwek's breach of the deposit agreement would result in a commensurate reduction in the purchase price and expunge the liquidated damage clause in its entirety. We think that the contract reasonably could not be considered ambiguous based on an interpretation which would reward the buyer for its breach. *See Jefferson Ins. Co. v. Holyoke*, 23 Mass.App. Ct. 472, 475 n. 4, 503 N.E.2d 474, 476 n. 4 (1987) (reviewing court "must itself determine, as a matter of law, the question of ambiguity").

Thus, the unarticulated assumption that the liquidated damage provision was expunged by Dwek's failure to deposit the $48,000 is unsupported by evidence or logic. Absent a subsequent modification or novation of the October 8 agreement (and the jury found neither),[4] the failure to make the $48,000 deposit in no way *altered* either *the agreement to do so* or the *amount* of liquidated damages prescribed for the failure to do so. As neither fraud nor mistake was alleged, the deposit and liquidated damage provisions are presumed to express the intent of the parties, *Hess Oil & Chemical Co.*, 3 Mass.App.Ct. at 772, 331 N.E.2d at 823, and Dwek was bound by their plain language, *see Hiller*, 325 Mass. at 550, 91 N.E.2d at 669. The liquidated damage instruction did not constitute error.

## 2. *Exclusion of Dwek's Deposition*

■ The district court refused to allow Dwek's deposition to be read to the jury at trial. According to the deposition, taken July 9, 1990, Dwek had been living and working in California for approximately one year. On the eve of trial, through counsel, Dwek requested a continuance due to alleged financial hardship. The request was denied. In his opening statement, Dwek's counsel informed the jury that Dwek would arrive within a day or two, but that the defense did "have his testimony recorded" in the event Dwek did not appear. When Dwek had not arrived by day two, counsel tried to introduce the pretrial deposition pursuant to Civil Rule 32(a)(3)(B), which provides that

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, *unless it appears that the absence of the witness was procured by the party offering the deposition.*

Fed.R.Civ.P. 32(a)(3)(B) (emphasis added). Following "lengthy discussions" in chambers, which apparently were not recorded,

---

4. *See supra* note 2.

the district court excluded the deposition on the ground that the "defendant ha[d] shown no reason why he shouldn't be [there]."

A deposition may be used by any party if the witness is more than 100 miles from trial "unless it appears that the absence was procured by the party offering the deposition." The district court, familiar with the case and, presumably, with Dwek's circumstances, plainly though impliedly determined that Dwek had procured his own absence from trial, as he had failed to present any "reason why he shouldn't be [there]." As the proponent of the deposition, Dwek bore the burden of demonstrating to the trial court that he had not procured his own absence, *Allgeier v. United States,* 909 F.2d 869, 876 (6th Cir.1990) (party introducing deposition must establish Civil Rule 32(a) requirements) (FTCA case); *Jauch v. Corley,* 830 F.2d 47, 50 (5th Cir.1987) (same); *Rascon v. Hardiman,* 803 F.2d 269, 277 (7th Cir.1986) (same). Now he bears the heavy burden of establishing that the trial court's exclusionary ruling amounted to an abuse of discretion. *See Willhauck v. Halpin,* 953 F.2d 689, 717 (1st Cir.1991) (admission of evidence within sound discretion of trial court); *Belber v. Lipson,* 905 F.2d 549, 551 (1st Cir. 1990) (same).

Absent any indication in the record that Dwek's alleged inability to attend trial was substantiated, we are unable to discern error in the exclusionary ruling. *See* Fed. R.Evid. 103(a), (d) & advisory committee note (d).[5] The record merely indicates that Dwek relocated to California after the suit was instituted in Massachusetts, and failed to appear at trial notwithstanding contrary predictions by counsel. Twice Dwek sought a continuance of the trial, first on the ground that he could not attend at the scheduled time, and later for reasons of financial hardship nowhere substantiated in the record. The first request was granted; the second denied. At trial, counsel informed the jury that Dwek was "either on a plane or would be here tomorrow morn-

ing." Although Dwek contends that he failed to appear because he was without the resources to travel to Massachusetts, there is no evidence in the record that he was *unable* to appear for *any* reason. The record discloses no basis for the contention that the district court abused its discretion. *See Nationwide Mut. Fire Ins. Co. v. Dunkin,* 850 F.2d 441, 443 (8th Cir.1988) (Rule 32(a)(3)(B) ruling entrusted to trial court's discretion); *Alfonso v. Lund,* 783 F.2d 958, 961 (10th Cir.1986) (same).

### 3. *Comments to Jury*

Dwek claims that the district court commented improperly to the jury on his failure to appear at trial. In his appellate brief, what purports to be the relevant portion of the jury charge is related as follows: "We don't know why he (Dwek) is not here. The one reason that he may not be here is because he doesn't want to be.... I have no idea what was running through his mind." The quotation elides the entire third sentence in the relevant portion of the charge: "Another reason may be that the burden is on the Plaintiff to prove the case and he is going to let them prove their case without any contradiction from anybody else [sic] by him." Finally, the district court informed the jury: "But I do remind you that the burden of proof in this case is on the plaintiff." Contrary to Dwek's misleading presentation, *in its entirety* the relevant portion of the charge gave the jury a balanced presentation of plausible explanations for Dwek's nonappearance, without attempting to influence its determination; *viz.,* "I have no idea what was running through his mind." The claim is frivolous.

### 4. *Restriction on Cross–Examination*

Finally, the district court precluded Dwek from cross-examining the drafter of the October 8 agreement concerning the meaning of the liquidated damage provision. On appeal, Dwek asserts that he was attempting to show that the parties never

---

**5.** As the advisory committee note explains, "... failure to comply with normal requirements of offers of proof is likely to produce a record which *simply does not disclose the error."* Fed. R.Evid. 103(d) advisory committee note (d) (emphasis added).

contemplated that he deposit $48,000, and, therefore, that the liquidated damage clause was ambiguous as to what, if any, liquidated damages were intended. When the district court restricted cross-examination at trial, however, Dwek neither made a proffer of the evidence he intended to introduce, nor was the substance of the evidence, as presently characterized, apparent from the context.[6] *See* Fed.R.Evid. 103(a)(2); *see also Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 157 n. 4 (1st Cir.1990). Thus, we review the exclusionary ruling for plain error. *See* Fed.R.Evid. 103(d); *see also Doty v. Sewall*, 908 F.2d 1053, 1056 (1st Cir.1990). We find none. *See* Jack B. Weinstein, *Weinstein's Evidence* ¶ 103[07], at 103–90 (1991) ("that which is not visible cannot be 'plain'") (quoting *Sykes v. United States*, 373 F.2d 607, 612–613 (5th Cir.1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967)).

Dwek's *actual* attempt to cross-examine the drafter of the October 8 agreement was an impermissible effort to introduce incompetent parol to contradict the unambiguous terms of the parties' integrated agreement relating to their intentions with respect to the $48,000 deposit. *See New England Financial Resources*, 30 Mass.App.Ct. at 145, 566 N.E.2d at 1139. The district court was alert to the gambit, and its evidentiary ruling was entirely proper.[7]

The judgment of the district court is *affirmed; double costs, and partial attorney fees,*[8] *to the appellee.*

---

6. The relevant exchange was as follows:

    Q. But it was undisputed that Clause 22 is in there and that *governed* the relationship, the parties—

    THE COURT: Whether it *governed it or not,* the question I strike.

    Q. But the language, the final language, was *acceptable* .to both parties that Clause 22 would be the sole remedy for the seller, correct?

    MR. BROWN [attorney for Trust]: Objection

    THE COURT: *Excluded.*

(Emphasis added.)

7. The Trust requests costs and attorney fees. In light of the frivolous claim discussed in pt. II 3, appellee is awarded double costs, as well as attorney fees incurred in connection with that claim. *See* Fed.R.App.P. 38.

8. *See supra* note 7.