**FREDERICK et ux. v. YELLOW CAB CO. OF PHILADELPHIA.**

No. 10818.

United States Court of Appeals Third Circuit.

Argued Nov. 4, 1952.

Decided Nov. 26, 1952.

James J. Leyden, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa:, on the brief), for appellants.

Wilfred R. Lorry, Philadelphia, Pa. (Joseph Weiner and Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH, and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Virginia Frederick, a taxicab passenger, and her husband have invoked diversity jurisdiction to obtain federal adjudication of their claim against the Yellow Cab Company for injury said to have been caused by the negligent movement of a taxicab while Mrs. Frederick was alighting from it. The accident occurred in Philadelphia, suit was filed in the District Court for the Eastern District of Pennsylvania and the contested issues, other than that which concerns a Federal Rule of Civil Procedure, are governed by Pennsylvania law. A jury awarded the plaintiffs substantial damages and the company has appealed.

Appellant claims first that the district court erroneously allowed the jury to award Mrs. Frederick damages for the impairment of her future earning capacity. To support this position, appellant relies upon undisputed testimony that Mrs. Frederick, who was fifty-three years old at the time of the accident, had suffered from heart disease for a number of years; that she had required periodic medical examination and treatment and that sometime before the accident her condition had become such that her doctor had admonished her "not to do any work at all". However, it also appears that Mrs. Frederick had worked as a saleslady until about three years before the accident, that her employment was terminated because of the closing of the shop where she worked and that thereafter and until the time of the accident she had performed the tasks normally involved in keeping house for a family of six persons. There also was evidence that before the accident she had decided to resume gainful employment and had applied at several places for work as a saleslady. Finally, there was testimony that after and because of the injury in suit she was incapacitated from work.

In these circumstances, the trial judge refused to give the following instruction requested by the company:

"3. If you find for the plaintiff, you may not award Mrs. Frederick any damages for loss of earning capacity, —her doctor has told us that because of her heart condition, he told her to stop work and the testimony also shows she did so in 1946 and thereafter was not gainfully employed".

Instead, the court charged that the verdict might include compensation "for such further impairment of her earning power as you may find she will sustain in the future by reason of her injury". Beyond this the court charged as follows:

"One of the doctors testified, I think her own doctor, that he had advised her not to do outside work and to give that up. You will have to bear in mind all that testimony and determine how much you think her previous heart condition, which had nothing at all to do with this accident, impaired her earning capacity, and that the heart condition which you heard described by the doctors and by her, you will say whatever earning capacity she had whether it was diminished by the accident. I am trying to make that as plain as I can so that you will make due allowance for her admitted previous incapacity due to her heart condition

and the actual condition that might confront her later on in life if she lived her normal life".

To maintain its objection to these instructions, appellant must insist that there can be no issue of fact as to the employability or earning power of a person whose health is such that she should not work and whose medical adviser has forbidden her to work. But so strict a conception of unemployability does not take into account human experience and the exigencies of subsistence which are important factors in any reasonable determination of just compensation for tortious injury. Whether from necessity or for some other reason, many persons accept employment or persist in working in disregard of dire predictions and strict prohibitions of their medical advisers. The evidence already outlined might well have convinced a jury that Mrs. Frederick was such a person. It was fair and proper that the jury be permitted to measure her earning power not merely in the light of what she should have avoided to conserve her health but also in the light of what she was doing up to the time of the accident and probably could and would have done thereafter but for the injury in suit. See Wolf v. C. Schmidt and Sons Brewing Co., 1912, 236 Pa. 240, 245, 84 A. 778, 779; Hrabak v. Hummel, E.D.Pa. 1943, 55 F.Supp. 775, 779, affirmed 3 Cir., 1944, 143 F.2d 594. The district court properly recognized the contentions and evidence of the appellant by instructing the jury to consider any impairment of health as a circumstance which affected earning power. However, it was equally proper for the judge to refuse a binding instruction that Mrs. Frederick was unemployable in the light of the countervailing evidence of her actual conduct. Cf. Saganowich v. Hachikian, 1944, 348 Pa. 313, 35 A.2d 343.

■ Appellant also complains of instructions given concerning the duty of a taxicab driver to assist a passenger to alight. Appellant requested a simple instruction that its driver was under no such duty. Instead, the court charged:

"* * * that the taxi driver, Mr. Danowitz, was not obliged to get out and open the door of that cab to assist Mrs. Frederick to alight unless he had some reason for thinking, or believing from her appearance and so forth that she needed such assistance, or unless she asked for it. In other words, if you get in a taxicab and say, 'Take me home,' or 'Take me to a certain place,' the cab driver, although they usually do, is not obliged to get out and open the door. But, if there is something physically defective in our physical condition or mental condition where the cab driver would be put on notice that his passenger isn't able normally to look after himself, he would be obliged to open the door, but in this case Mr. Danowitz said he did get out and that he opened the door and she paid him, and he says he closed the door and went around and got in his cab, and then he heard her fall. * * * but, I can say that the cab driver was not required to open the cab door unless there was something that warranted him in believing that the woman wasn't able to do it herself or she had asked for that."

In generality, this language was a correct statement of a taxi driver's legal duty. Schickel v. Yellow Cab Co., 1952, 369 Pa. 356, 85 A.2d 138. On the other hand, there was no evidence here that the appearance or conduct of the passenger was such as to suggest a need for assistance in alighting from the vehicle. It is appellant's position that by informing the jury that under certain circumstances a driver would be obligated to assist an alighting passenger the court affirmatively suggested to the jury that it might find the existence of those conditions as a basis of liability here. Examining the complaint, the evidence, and the entire charge, we think this was not the case. The jury was not told, and on the whole record we think could not reasonably have inferred that in this case liability might properly be predicated upon the failure of the driver to assist the alighting passenger. Indeed, we think the court made

it clear that the claim of negligence in this case was predicated upon the untimely movement of the cab. Unquestionably it would have been proper and preferable in the circumstances for the trial judge to have given the simple, unqualified charge requested by the company concerning assistance to a passenger. But his failure to do so is reversible error only if it seems likely that as a result thereof the jury imposed liability on a theory which no one urged and which the evidence in no way supported. We find no such likelihood.

■ Finally, appellant asserts that the court erred in admitting into evidence over its objection the deposition of Joseph Dattilo who claimed to have been an eye witness to the accident. This deposition had been taken in Philadelphia by counsel for the appellees with elaborate cross-examination by counsel for the appellant less than two weeks before trial. It appears that this procedure was adopted because Mr. Dattilo's business made it necessary for him to be in New York one or more days each week. Uncertainty as to the days when he would be in Philadelphia combined with uncertainty as to the dispatch with which the court could move through its calendar created a danger that the case might be reached and tried while Dattilo was in New York.

During the trial, appellee offered Dattilo's deposition. The record at that point reads as follows:

"Mr. Lorry: If the Court please, we have a deposition of a witness who is not available, and I would suggest. I have one of my associates take the stand and act as the witness.

"The Court: Is that satisfactory to Mr. Leyden?

"Mr. Leyden: May it please the Court, this deposition was taken several weeks ago because the witness then said that last week when this case was on the list he had to go to New York, but I think in the absence of a showing that the man isn't available today, if this man is right here in the city it seems to me, like any other witness, it is always better to have the jury hear him.

"Mr. Lorry: That is better, and if he were available I would love to have him, because he would make a much better impression than reading.

"Your Honor will notice on pages 2 and 3 that the witness said, 'My business calls me away every week, especially at the present time with conditions the way they are.' I called this man in an effort to get him here and the timekeeper told me that he will not be in town today or tomorrow.

"The Court: All right, then, we can use the deposition.

"Mr. Leyden: Your Honor will note my objection."

The legal ground for admitting the deposition is not stated. Apparently it was offered and admitted as within the authorization of Rule 26(d) (3) of the Federal Rules of Civil Procedure which provides for the use of depositions where "the party offering the deposition has been unable to procure the attendance of the witness by subpoena". Unquestionably the showing on this issue was scant. Yet there was no showing at all in opposition. Indeed, the only point made by appellant was that "If this man is right here in the city * * * it is always better to have the jury hear him". On what was before him, the trial judge apparently concluded that the witness was in fact out of the jurisdiction and, therefore, that the procurement of his attendance by subpoena had not been practicable. While the substitution of depositions for testimony in open court is not to be encouraged, we cannot say on this record that the trial judge was wrong in concluding that the conditions under which Rule 26(d) (3) permits the use of a deposition existed here.

The judgment will be affirmed.