Fannie K. HERTZ, Plaintiff-Appellee,

v.

Elizabeth N. GRAHAM, individually and doing business as Maine Chance Farm, Defendant-Appellant.

No. 150, Docket 26349.

United States Court of Appeals Second Circuit.

Argued Jan. 13, 1961.

Decided July 3, 1961.

See also 168 F.Supp. 755.

John J. Macchia, of Townley, Updike, Carter & Rodgers, New York City (J. Howard Carter and Lee W. Meyer, New York City, of counsel), for defendant-appellant.

William J. Manning, of Simpson Thacher & Bartlett, New York City (Cyrus R. Vance and Rolon W. Reed, New York City, of counsel), for plaintiff-appellee.

Before CLARK, MAGRUDER and MOORE, Circuit Judges.

MAGRUDER, Circuit Judge.

Plaintiff owned a race horse named Speedy Wave. Defendant also owned one named Star of Roses. The two horses collided on the training track at Belmont Park and both were killed instantly. Plaintiff sued Mrs. Graham for the loss of Speedy Wave. Defendant counterclaimed for the loss of Star of Roses. The jury brought in a verdict giving damages to the plaintiff for the death of Speedy Wave. Judgment was entered pursuant to the jury verdict, from which the defendant takes the present appeal. Wesley E. Brite, an exercise boy in the

employ of the plaintiff, had, prior to the present litigation, recovered the sum of $80,000 in a separate action for the injuries he received in the accident. Brite v. Graham, Civil Action No. 97–240.

The testimony of Brite and of Monte D. Parke, who was employed as Mrs. Hertz's trainer, was to the effect that, on the morning of October 17, 1954, Brite, mounted on Speedy Wave, and Parke, mounted on a pony, entered the training track at Belmont Park. Their purpose was to "breeze" their horse, that is, to run it a measured distance in a given time, in this instance ⅜ of a mile in 36 seconds. Upon entering the track Brite and Parke encountered defendant's exercise boy and her foreman by the inside rail holding a horse, later identified as Star of Roses, by means of a shank. Parke called out to them, "You'd better get that horse off the track before you get run over." Star of Roses was led to the outside rail, and the exercise boy mounted it, though defendant's foreman still held onto the horse. Both Brite and Parke noted that Star of Roses was in this position when Brite started to breeze Speedy Wave in a counter-clockwise direction occupying only the inside rail, as was usual for breezing. The total width of the track was, as stated by both Brite and Parke, 90 to 100 feet. Neither of them related just what happened in the meantime. Parke testified that he saw the riderless Star of Roses running in a clockwise direction along the rail about "four jumps" before the accident. Brite did not see Star of Roses until the two horses were "10 or 15 feet away" from each other, and although he attempted to avoid the accident the horses collided.

The testimony tending to show that defendant had been guilty of negligence came entirely from three depositions which the district court admitted in evidence. These depositions, by George W. Cochrane, Peter G. Griffiths, and Patrick F. O'Neil, had been taken in the action brought by Brite against this same defendant to recover for his injuries. These three men had worked for the defendant at one time or another and their

duties had included the training of Star of Roses. Mr. Cochrane, who was an assistant trainer for Mrs. Graham from April to June of 1954, deposed that Star of Roses was a "rogue" or "outlaw" which, unlike other two-year-old horses, had not been "broken" to gallop or breeze, but customarily would "duck to the left or to the right or would wheel completely around and dislodge his rider and run off." Each time Star of Roses was brought to the track without a lead pony, it succeeded in unseating its rider, said Mr. Cochrane. Griffiths, the trainer for five days in 1954, had similar experiences with Star of Roses, as did O'Neil, who from June, 1953, to May, 1954, was foreman and subsequently assistant trainer. O'Neil further observed Star of Roses on October 17, 1954, shortly before the accident in question. The horse went 100 yards down the track, dislodged its rider, then wheeled and ran clockwise along the rail. According to the depositions, Mrs. Graham did not allow those responsible for the training of the race horse to use spurs or whips, nor did she take notice of advice that Star of Roses was overstimulated sexually and should be gelded. Once Mrs. Graham awoke her trainer at midnight in order to fire him for having used a whip on Star of Roses. This trainer was said to be "one of the finest in the country."

■ We think it clear that there was sufficient circumstantial evidence submitted to the jury to justify a plaintiff's verdict that Mrs. Graham and her employees had been negligent and that this negligence had caused the accident. From the many recitals of unruly behavior, it was only natural to infer that Star of Roses merely repeated on the fateful morning what by then had become habitual with it. We cannot know with certainty the grounds upon which the jury based its finding of negligence, but many were available. Defendant knew the propensities of the beast but she did not prevent its being taken onto the track where other horses were apt to be breezing. Several methods of correcting Star of Roses' erratic behavior had been sug-

gested: the horse could have been gelded; perhaps whipping would have deterred such conduct; a "ring" or "trap" or other device could have been used; a lead pony could have accompanied it onto the track.

■ Likewise it could not be said as a matter of law that the plaintiff or her employees were guilty of contributory negligence. When Brite started to breeze Speedy Wave, the inside rail was clear and Star of Roses was under restraint. Parke testified that he had no knowledge of the dangerous propensities of Star of Roses, though he surmised upon entering the track that Star of Roses had been "unruly." We do not forget that if the danger had been seen by Parke he had a duty to use care to avoid it. But we cannot say that this is a case where, on the undisputed facts, contributory negligence would have to be found by a reasonable jury. Townes v. Park Motor Sales, Inc., 1958, 7 A.D.2d 109, 180 N.Y.S.2d 553, affirmed 1959, 7 N.Y.2d 767, 194 N.Y.S.2d 37. The verdict for the plaintiff must be affirmed on the merits unless there is some other reason for reversing it.

Defendant urges two grounds for reversal. First, she says that the court below erred in dismissing her counterclaim, alleging that the fatal collision was caused by the plaintiff's negligence, she being free of the same. Second, that the trial judge committed reversible error in admitting into evidence the three depositions referred to above.

■ As to defendant's counterclaim, we must inquire whether the doctrine of collateral estoppel called for a dismissal; and whether, even if it did, the trial judge committed reversible error in ordering a separate non-jury trial of this issue in the face of an earlier ruling by another judge of the district court refusing to grant a motion by the plaintiff for a summary judgment on the counterclaim based on the same ground. It seems that, after Brite had recovered in his suit against Mrs. Graham, the plaintiff in the present action moved before Judge Kaufman for summary judgment on the defendant's counterclaim, asserting that the Brite action had conclusively established that Brite was not negligent and that the defendant was. Judge Kaufman, however, ruled that the Brite jury was given the alternative of basing its judgment on a theory of absolute liability for harboring a "dangerous animal" and that under New York law negligence was not an issue in that action. Since in Judge Kaufman's view Brite v. Graham had not determined either defendant's negligence or plaintiff's contributory negligence, it followed that he denied the plaintiff's motion for summary judgment. D.C.S.D. N.Y.1957, 158 F.Supp. 201; D.C.S.D. N.Y.1958, 168 F.Supp. 755.

When this case came on for trial before Judge Levet, plaintiff moved under Rule 42(b), 28 U.S.C.A., for a separate trial without a jury on the matters raised by defendant's counterclaim. Judge Levet agreed with Judge Kaufman that under the New York law recovery could be granted for harm caused by a domestic animal having dangerous propensities, without regard to negligence. See Karlow v. Fitzgerald, D.C.Cir., 1961, 288 F.2d 411. But Judge Levet felt that the Brite action had been presented, perhaps erroneously, in such a way that the jury necessarily determined that Brite was not, and the defendant was, negligent. So finding, he directed that the motion for dismissal of defendant's counterclaim should be granted, on doctrines of res judicata. This appears to be the New York law, which throughout the proceeding the parties have taken to be applicable to this question. Israel v. Wood Dolson Co., Inc., 1956, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97. See Good Health Dairy Products Corp. of Rochester v. Emery, 1937, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401.

If we thought that Judge Levet was right in his ruling, we could not sensibly upset his decision on the ground that he should have accepted Judge Kaufman's order on the same matter in the motion Judge Kaufman had previously determined. The district court's "law of the

case" was not our "law of the case"; and certainly it was not the "law of the case" of the Supreme Court. See White v. Higgins, 1 Cir., 1940, 116 F.2d 312, 317. It may be conceded to be unseemly for judges of co-ordinate jurisdictions to "review" one another's decisions, and ordinarily they do not do so. Yet in the past we have refused to reverse a case for the purpose of protecting the judicial sensibilities of the judge who first made a ruling on the matter. See Dictograph Products Co., Inc., v. Sonotone Corp., 2 Cir., 1956, 230 F.2d 131, 231 F.2d 867, which we assume, has substantially impaired the apparently stronger statement in Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 2 Cir., 1925, 10 F.2d 937.

We have no doubt that Judge Levet was right in his conclusion that the jury in Brite v. Graham had determined the negligence issues. See Restatement, Judgments, §§ 99, 107; Good Health Dairy Products Corp. of Rochester v. Emery, supra, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401. It is true that at one point in the charge of the court in that action reference was made to an absolute liability statement of § 509 of the Restatement of Torts. But when the charge is read as a whole, it is evident that the court intended to leave the case to the jury on a negligence theory and that the jury would reasonably so have understood it. The court specifically charged the jury in Brite v. Graham that:

"For plaintiff to recover he must establish by a fair preponderance of the evidence four things:

"1. That the horse Star of Roses was a dangerous or vicious horse in the sense that I have defined this term to you, or had dangerous tendencies likely to cause injury to others;

"2. That Mrs. Graham, or her agents or servants, knew or should have known that it was a dangerous or vicious horse or that it had such dangerous tendencies;

"3. That having such knowledge, it was negligence for Mrs. Graham, or her servants or employees, to permit the horse to be or remain on the exercise track on the morning in question; and

"4. That plaintiff is free from contributory negligence."

Furthermore the jury in the present case, in answer to a special interrogatory propounded by the court, found that defendant, Mrs. Graham, had been negligent, which was proof enough that it would have found in favor of the plaintiff on the defendant's counterclaim had that issue been submitted to it.

We find no error also in the way in which the trial judge dealt with the three depositions which defendant complains should not have been introduced into evidence. As has already been stated, these depositions were taken in the case of Brite v. Graham. In a pre-trial ruling, Judge Dawson had held that testimony and depositions from that action would be admissible even though the parties were different, "provided, however, that plaintiff meets the same requirements necessary for the reading of any deposition (Rule 26(d) (3) of the Rules of Civil Procedure)." D.C.S.D.N.Y.1958, 23 F.R.D. 17, 23. As a matter of fact, appellant does not question the correctness of Judge Dawson's basic ruling, but challenges only the conclusion by the district judge that the conditions of the proviso had been satisfied.

Rule 26(d) (3) permits the use in evidence of depositions when "the witness is at a greater distance than 100 miles from the place of trial or hearing * * * [or] the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or * * * that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used." Plaintiff introduced Cochrane's deposition and read it into evidence without objection from the defendant. Before it was introduced

and read to the jury, defendant's counsel had told the court that he had "some motions" which he would like to address to the court with respect to the "lack of admissibility" of the depositions. But when asked directly whether there was "any objection to reading this deposition of Cochrane," he said he was concerned only with the form of some of the questions and answers. After reading the deposition, he indicated that "there is nothing there that I would object to."

The next day defendant's attorney objected to the introduction of the two other depositions, by Griffiths and O'Neil. These were taken in 1957 and showed on their face that the persons making them resided outside the jurisdiction. Griffiths was living in Long Beach, California; O'Neil's permanent residence was in Chicago, Illinois. When asked when he would be in New York O'Neil answered that he did not know. In colloquy, plaintiff's counsel said that he had inquired and had made "every attempt possible" but had been unable to locate Griffiths and O'Neil. Parke, who was familiar with the habitués of the track, confirmed this. Therefore, Judge Levet's "finding" that Griffiths and O'Neil were "at a greater distance than 100 miles from the place of trial or hearing" is unassailable. There was no evidence from which this court could conclude differently. See Frederick v. Yellow Cab Co. of Philadelphia, 3 Cir., 1952, 200 F.2d 483. The court, upon assurance of counsel that he had been unable to locate Griffiths and O'Neil, allowed the two depositions to be read into the record, subject to a motion to strike if the plaintiff failed to verify that the witnesses were not around. At that time no mention was made of Cochrane's deposition. The presentation of the evidence to the jury was completed on that day. When the trial was resumed, plaintiff's counsel said he had found out that Cochrane in fact had been seen at Belmont. This was corroborated by the testimony of Parke. At this juncture defendant moved to have Cochrane's deposition stricken, but the court ruled that defendant had waived her objection by failing to object in a more timely way. Instructions were then given to the jury by the trial judge, and the trial was completed.

■ The trial court acted within its discretion in letting in the deposition. It is true that Rule 46 F.R.Civ.P. has obviated the necessity of formal exceptions or rulings, but a timely objection would have given the court an opportunity to make a ruling at a time when the plaintiff could have complied without prolonging the trial. "[D]ue regard to the importance of presenting the testimony of witnesses orally in open court," as stated in Rule 26(d) (3), did not require that Cochrane's deposition be stricken after it had been read into evidence without objection. There is to be sure no suggestion that the testimony in the depositions was unreliable. Defendant's witnesses testified solely as to the amount of damages.

■ There is, however, one point in the trial judge's action which does call for a reversal, namely, the allowance by the court of interest in the amount of $7,892.10 from the date of the accident which the trial judge added to the jury's verdict of $23,700. In taking this action, the trial judge relied upon various cases from New York lower courts, some of which we mentioned in Newburgh Land & Dock Co. v. Texas Co., 2 Cir., 1955, 227 F.2d 732. It is right that the New York law should be controlling in this matter. See Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Moore-McCormack Lines, Inc. v. Amirault, 1 Cir., 1953, 202 F.2d 893, 896. The lower New York courts, as indeed did we, Newburgh Land & Dock Co. v. Texas Co., supra, and various commentators, 60 Harv. L.Rev. 1158 (1947), gathered from a dictum in Flamm v. Noble, 1947, 296 N.Y. 262, 268, 72 N.E.2d 886, 171 A.L.R. 812, that the New York Court of Appeals regarded its previous decisions on interest as "manifestly unsound" and would reverse its prior rulings which had al-

lowed interest as a matter of right in actions for conversion, but had left interest in actions for negligence to the determination of the jury. After the hearing on this appeal, the New York Court of Appeals, in Purcell v. Long Island Daily Press Publishing Co., Inc., 1961, 9 N.Y. 2d 255, 213 N.Y.S.2d 425, 173 N.E.2d 865, held that, however unsound this distinction might be, it must stand until changed by the legislature. Although obviously the trial judge could not be blamed for not giving heed to a decision by the Court of Appeals not yet rendered, we feel nevertheless bound to follow the latest published decision by that court. Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327. The New York law must be presumed to be that interest from the day of the accident is not allowed in this case as a matter of right. If federal law is involved, the exercise of discretion in the award of interest must be made by the jury, not by the court as a matter of law. See Newburgh Land & Dock Co. v. Texas Co., supra, 227 F.2d 732, 735.

It might be that the jury, if it had been permitted to do so, would have allowed interest from the date of the accident as a matter of discretion in order to do more complete justice. The charge given by the court, to which no objection was taken (see Rule 51 F.R. Civ.P.), said nothing to the jury about interest, nor did the plaintiff mention the item of interest in her requests to charge. Naturally the jury did not exercise any "discretion" in the award of interest, but we do not think that the plaintiff should suffer by reliance upon our earlier interpretations of New York law in being deprived of the chance of a discretionary award of interest by the jury.

The judgment of the District Court is affirmed, so far as it is based upon the earlier verdict of the jury as to the amount of the plaintiff's loss. Otherwise, the judgment of the District Court is vacated and the case is remanded to that Court for the trial by a jury of the issue of the discretionary award of interest on the amount of the plaintiff's loss, as found by the previous jury, unless the parties waive a jury trial, in which event the trial shall be to the Court or unless the plaintiff withdraws her claim to interest; plaintiff recovers costs of this appeal.