[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13940

_____

EARLINE MCBRIDE,

Plaintiff-Appellant,

*versus*

CARNIVAL CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cv-24894-DPG

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

LAGOA, Circuit Judge:

Earlene McBride appeals the district court's judgment following a jury trial in her personal injury action against Carnival Corporation stemming from an incident where McBride fell out of her wheelchair while a Carnival crewmember, Fritz Charles, pushed the wheelchair as they disembarked one of Carnival's cruise ships.  On appeal, McBride raises two issues.  First, McBride argues that the district court erred in allowing Charles's deposition testimony to be presented to the jury over her objection under Federal Rule of Civil Procedure 32(a).  Second, McBride contends that the jury's verdict is inadequate because the jury awarded her economic damages "flowing immediately from the fall," e.g., past medical expenses she incurred following the wheelchair incident, but did not award her past pain and suffering damages.

For the following reasons, we conclude that the district court did not abuse its discretion in denying McBride's Rule 32(a) objection and affirm as to that issue.  But because we find that the district court erred by denying McBride's Rule 59 motion as to past pain and suffering damages related to the jury's award of past medical expenses, we reverse in part and remand for a new trial limited to that sole issue.[1]  We otherwise affirm the jury's verdict.

---

[1] In *Dimick v. Schiedt*, 293 U.S. 474 (1935), the Supreme Court held that the Seventh Amendment prevents a court from increasing a jury's award.  *Id.* at 486–87.  As such, a grant of additur is not permitted.

## I.      RELEVANT BACKGROUND

Carnival is the owner and operator of the cruise ship, the Carnival *Ecstasy* (the "Ship").  In November 2015, McBride and her then-fiancée took a cruise vacation on the Ship as fare-paying passengers.  At the time, McBride weighed over 300 pounds, and she asked to use a wheelchair for boarding and disembarking the ship.  On November 23, 2015, upon the conclusion of the vacation, McBride disembarked from the Ship via wheelchair, being pushed by Carnival crewmember Charles.  During the disembarking, the wheelchair's wheels got caught by a hump at the end of the gangway, and McBride fell out of the wheelchair.  The parties dispute the severity of this fall—McBride claims she was violently thrown to the ground while Carnival, through Charles's testimony, claims that Charles was partially able to catch McBride initially before releasing her slowly to the ground.  She was taken via ambulance to Jackson Memorial Hospital to be evaluated and was discharged from the hospital about eight hours later.  In the following years, McBride went to multiple doctors complaining about pain in her back, hips, knee and shoulders.  Finally, in November 2017, McBride saw a new doctor, who began treating her in May 2018—after she had filed suit against Carnival—and ended up performing two surgeries on her.

On November 23, 2016, McBride filed a complaint against Carnival in the Southern District of Florida.  In her complaint, McBride alleged that she suffered severe injuries arising from the wheelchair incident due to Carnival's negligence.  The case proceeded to trial.

In a joint pretrial stipulation, the parties agreed that Charles was the Carnival employee who was pushing McBride's wheelchair from the Ship to the terminal when it tipped forward and caused her to fall to the ground. During the discovery phase, Charles was deposed, and the parties jointly filed his deposition. McBride's trial witness list included Charles and stated that he was "expected to testify." On September 20, 2019, Carnival submitted an amended witness list that included Charles and stated that it expected Charles to be present at trial.

The trial was originally set to begin on March 9, 2020, before Judge James Lawrence King. During the March 6, 2020, calendar call, McBride's counsel raised an issue regarding Charles as a fact witness "who may or may not appear for trial" by stating that, although she had subpoenaed Charles, she was unsure if he would appear for trial because, during his deposition, Charles indicated "he didn't want to come." After Judge King asked about what course of action he should take—i.e., "[w]hat is the motion" and "whether [he] should try to find [Charles] or bring him in"— McBride's counsel stated that "[w]e have stipulated to deposition designations because he was deposed in this case." Directly after her statement, Carnival's counsel replied that "[i]f he does not appear . . . [and] despite good service, does not appear, that the parties would stipulate using his designated testimony and we have, in fact, already filed those with the Court in the abundance of caution." McBride's counsel did not object to Carnival's characterization of the stipulation, and Judge King agreed to their stipulation. The next day—two days before trial—Carnival filed a second

amended witness list, in which Carnival changed its indication that Charles would testify at trial to Charles's testimony being presented by video deposition. McBride made no objection to the second amended witness list's change at the time Carnival filed it.

Although the trial was originally scheduled for March 9, 2020, it was rescheduled twice: first, to April 21, 2020, due to Carnival's motion to strike and exclude untimely disclosed medical records and opinions, and then later due to the COVID-19 pandemic. On December 28, 2021, Judge King was recused from the case, and the case was reassigned to Judge Darrin P. Gayles. The trial ultimately took place from February 14 to 17, 2022.

At the beginning of the second day of trial, McBride's counsel raised the issue of "deal[ing] with" Charles's deposition. The district court stated that it would handle the issue "later." After completing the second day of trial, the district court went through the designations for Charles's deposition with both parties' counsel. Both parties went through their objections and finally agreed upon the designations. Specifically, McBride's counsel stated that "there is only one pending objection, and then the rest is a blanket objection." These objections were to portions of Charles's testimony, mainly on the basis of "leading" or "hearsay," and the district court went through the objections with the parties, either sustaining or overruling them. But although McBride's counsel objected to another witness testifying at trial the next day, McBride's counsel, at that point, did not object to Charles's deposition being introduced into evidence at trial in lieu of him testifying in person.

The same day, McBride filed a written "Notice of Filing Objections to Defendant's Deposition Designations," which stated McBride objected to portions of Charles's deposition on the basis of hearsay. McBride's filing did not contain an objection to Charles's deposition being presented to the jury in lieu of his live testimony.

The next day of trial, Carnival stated its intention to present the video deposition of Charles to the jury in lieu of his live testimony. McBride objected to its use under Federal Rule of Civil Procedure 32, stating that because Carnival had not tried to subpoena Charles on its own, it could not use his video deposition. McBride's counsel further argued that he did not object while the parties were going through the deposition designations because he was "not allowed to object to the video until [it was] offered." In response, Carnival argued that they had a stipulation to which they had agreed and presented to Judge King. Judge Gayles overruled McBride's objection and allowed the deposition to be presented to the jury. Judge Gayles noted that McBride's counsel had spent over an hour the previous evening going through cross-designations to Charles's deposition without giving any indication that McBride would oppose the admission of the deposition at trial the next day.

Due to technical difficulties, the video of Charles's deposition was not played; instead, the deposition was read to the jury in line with the parties' deposition designations, in which he testified to the following. When Charles began to push McBride's wheelchair over a "bump" on the gangway, the wheelchair "got cut off from the bump," and then McBride started to fall. Charles had

"one hand on the wheelchair and one hand on [McBride]" to try and "hold[] her from falling." Charles believed McBride was too heavy for him and another nearby individual to keep her from falling. As a result, he "proceeded to continue to hold the wheelchair" as he "release[d] her slowly," with her feet and knees first touching the ground before her body. On cross-examination, Charles stated his pace went "up" as he tried to clear a gap in the ramp because the ramp was "slanted, so in order to go up a hill you have to speed up." He again stated that he had one hand on the wheelchair and one hand on McBride and that he released his grip on McBride slowly as she fell.

McBride, on the other hand, testified that, while disembarking, Charles was "running" when he hit a "thick piece of wood" with the wheelchair she was in, and she "flew" and "fell" out of the wheelchair. She claimed she fell on both of her knees and then her shoulder and felt a "piercing pain" in her knees, hip, back, and shoulders. She stated she could not get up after the incident and that several people had to pick her up and put her back into the wheelchair before she was taken to Jackson Memorial. McBride's spouse also testified that McBride appeared to be in pain after the fall.

As to the damages issue, after the incident, McBride was taken to Jackson Memorial Hospital by ambulance, where she underwent x-rays, was told nothing was broken and that she should be okay, and was discharged with pain medication. McBride first saw Dr. Kryzen in January 2016, who told McBride that she had

pain and degenerative changes in her back after taking x-rays. She then saw Dr. Liu, "who gave [her] injections," and Dr. Brenneman, who gave her ice and told her "that it was degenerative" and that she was overweight. Dr. Brenneman also did x-rays and a physical examination, and his assessment in 2016 was: (1) she had bursitis in her right shoulder, (2) her right hip had osteoarthritis, and (3) her knees had osteoarthritis. During this time, she did some physical therapy. And as a result of her injections, McBride reported at one point that "after the injections she felt fabulous and had no pain." On cross-examination, McBride also agreed that she was told that there were no surgical recommendations through 2017. McBride, however, claimed that the pain she was suffering from in her back, hips, shoulder, and knees did not exist before the wheelchair incident.

But McBride admitted that she had an accident in June 2009 where she sat in a chair and "fell to the left and injured [her]self," suffering left shoulder, neck, and back pain. On cross-examination, however, Carnival presented documentation from that 2009 accident that showed the body parts McBride referenced for treatment included "the knee, thigh, shoulder, back[,] and neck." In an August 2009 appointment, McBride suggested that her pain was a 7-to-8 out of 10 in terms of severity, describing it as "dull, stabbing, throbbing, burning, comes and goes and wakes [her] from [her] sleep," and as having numbness. MRIs from the 2009 incident were introduced into evidence, which indicated back injuries. In a November 2009 appointment, she indicated her pain was a 9 out of 10 in terms of severity. In a December 11, 2009, appointment, she

complained of "neck, left shoulder, and in between the shoulder blades . . . pain" and of "low back and left neck pain," and also indicated numbness on her outer left thigh.

Nearly two years after the Carnival incident, on November 1, 2017, McBride saw Dr. Thomas Roush, an orthopedic surgeon, for complaints of right shoulder pain, low back pain, and bilateral hip and knee pain. Dr. Roush testified that he conducted a general evaluation and that McBride had "spasm, which is involuntary muscle contraction or rigidity in her muscles, trigger points in her muscles of her back which are knots or focal areas of spasm." She also had pain in her back and "significant reduction in motion and strength weakness" in her right shoulder. As to her knees, there was "crepitus, which is an audible hearing with movement of the knees," and as to her hips, there was reduced range of motion and significant pain in all ranges of motion. Dr. Roush ordered an MRI, which showed injuries to McBride's lower back, knees, left hip, and right shoulder. Dr. Roush recommended and performed two surgeries on her back and referred her to Dr. Frank McCormick, an extremity specialist, for her hip, knee, and shoulder complaints. On cross-examination, Dr. Roush stated that he had not examined her within 24 hours of the wheelchair incident.

Dr. McCormick saw McBride in May 2018. He testified that she had a "high-grade partial thickness tear" in her right shoulder and meniscal tears in her knees. He also noted severe pain with movement and limitations in her range of motion as to her hips. He did not perform surgery on McBride but testified that he

recommended a shoulder arthroscopy, surgery on her knees, and bilateral hip surgery.

Dr. Mark Sinnreich, an orthopedic surgeon, testified as an expert witness for Carnival at trial. Dr. Sinnreich reviewed McBride's medical records from the date of the wheelchair incident, as well as her medical records and imaging studies from before and after the incident. He also physically examined McBride and reviewed deposition testimony. Dr. Sinnreich concluded that the incident was a relatively minor trauma that caused only soft tissue injuries, e.g., bruises, that she should have recovered from "within three weeks" or up to "three months." He stated that it was "a relatively minor trauma, a low energy type of injury, not much worse than like sneezing, a hard sneeze or a hard cough."

Dr. Sinnreich also read from the ambulance report, which stated that, right after the incident, McBride "complain[ed] of pain to the right shoulder, bilateral knees[,] and back due to a fall." However, Dr. Sinnreich did not believe that McBride sustained a permanent injury from the 2015 incident. He noted that McBride "had an incident back in 2009 where she sat in a chair and the chair broke or she fell out of the chair," during which she had suffered injuries. He also opined that "[w]hatever treatment that she receives in the future would be related to the normal aging process or possibly from that [2009] accident." Dr. Sinnreich did believe, however, that "any cost that [McBride] incurred with the ambulance ride, the emergency room, the general practitioner, whatever visits related to the physical therapy[,] and the physical therapy

costs" at Jackson Memorial were reasonable costs and related to the incident.

At the close of evidence, McBride moved for entry of a partial directed verdict on the issue of the $10,543.59 in medical expenses related to the ambulance and treatment at Jackson Memorial. Carnival opposed the motion, and the district court denied it.

During closing argument, McBride requested $575,000 for past and future pain and suffering, $412,820.58 for past medical damages, and $250,000 for future medical damages, totaling $1,237,820.58. In contrast, Carnival suggested that the jury award McBride no more than $10,543.59 in past medical expenses for her immediate medical attention following the wheelchair incident—and only if the jury determined that they were proven.

The jury ultimately returned a verdict of $10,543.59 for McBride for past medical expenses and zero damages for future medical expenses and past and future pain and suffering. The $10,543.59 amount corresponded to the economic damages that McBride incurred immediately following the wheelchair incident, e.g., past medical expenses from emergency room care at Jackson Memorial and ambulance charges. McBride did not object, however, to the adequacy of the verdict before the jury was discharged.

On March 18, 2022, McBride filed a motion for a new trial under Federal Rule of Civil Procedure 59. In this motion, she argued that the district court erred by allowing Carnival to read Charles's deposition into evidence over her Rule 32 objection and that the verdict was inadequate and required a new trial. McBride

also argued that the jury awarded her economic damages immediately from the fall but did not award any damages for past pain and suffering, meaning that the verdict was inadequate as a matter of law and required a new trial on damages. Carnival opposed this motion on the merits but did not argue that McBride had forfeited the issue relating to Charles's testimony because she failed to object before the jury's discharge.

The district court denied the Rule 59 motion in a paperless order, stating that its "trial rulings were correct, and the jury's verdict was consistent with the evidence and the law." This timely appeal ensued.

## II.    STANDARDS OF REVIEW

We review the district court's evidentiary rulings for an abuse of discretion. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1160 (11th Cir. 2005). We also review the district court's denial of a motion for a new trial under Rule 59 for an abuse of discretion. *See Mekdeci ex rel. Mekdeci v. Merrell Nat'l Lab'ys, Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (11th Cir. 1983).

## III.    ANALYSIS

On appeal, McBride raises two issues. First, McBride asserts that the district court erred in allowing the deposition of Charles to be presented to the jury over McBride's objection under Rule 32(a) as an unavailable witness, even though the parties stipulated to its use prior to trial. Second, McBride argues that the jury's verdict is inadequate as a matter of law because the jury did not award

any damages for pain and suffering, even though it awarded economic damages.  We address these issues in turn.

### A.  The Admission of Charles's Deposition at Trial

McBride argues that the district court abused its discretion in allowing Carnival to read Charles's deposition testimony to the jury over her Rule 32 objection.  McBride contends that she "was under no obligation to object to the use of the deposition until it was actually offered at trial."

The text of Rule 32(a) provides:

(1) *In General.*  At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
(C) the use is allowed by Rule 32(a)(2) through (8).

At issue here is whether Rule 32(a)(1)(C) has been satisfied—and specifically whether the use of Charles's deposition was allowed under Rule 32(a)(4), which deals with the use of a deposition for an unavailable witness.  Rule 32(a)(4), titled "Unavailable Witness," provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds" one of the five situations enumerated in Rule 32(a)(4)(A)–(E).   Of

relevance to this appeal, a party may use the deposition of a witness if the court finds "that the party offering the deposition could not procure the witness's attendance by subpoena." Fed. R. Civ. P. 32(a)(4)(D). The proponent of the deposition to be presented at trial generally bears the burden of demonstrating that it could not procure the witness's attendance by subpoena. *See Fairfield 274-278 Clarendon Tr. v. Dwek*, 970 F.2d 990, 995 (1st Cir. 1992). However, a party challenging the use of a deposition at trial under Rule 32(a) must timely object to the use of the deposition testimony. *See Spectrum Ass'n Mgmt. of Tex., L.L.C. v. Lifetime HOA Mgmt. L.L.C.*, 5 F.4th 560, 565 (5th Cir. 2021).

Additionally, under Federal Rule of Civil Procedure 26(a)(3), parties are required to file certain information about the evidence they may present at trial, including "the designation of those witnesses whose testimony the party expects to present by deposition." Fed. R. Civ. P. 26(a)(3)(A)(ii). Rule 26(a)(3) disclosures "must be made at least 30 days before trial," unless the district court orders otherwise. Fed. R. Civ. P. 26(a)(3)(B). Rule 26(a)(3)(B) also states that "[w]ithin 14 days after [the disclosures] are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii)." *Id.* "An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause." Fed. R. Civ. P. 26(a)(3)(B).

Thus, when a party discloses in its Rule 26(a)(3) filing that it intends to rely on a witness's deposition testimony, the opposing party must file an objection under Rule 32(a) within fourteen days of the disclosure, unless the district court sets a different time or excuses an untimely objection for good cause. Fed. R. Civ. P. 26(a)(3)(B). As such, we conclude that, as a general rule, when a witness has not been listed on a party's Rule 26(a)(3) disclosure as one whose testimony is expected to be presented by deposition, the proper time for the opposing party to object to the use of the witness's deposition in lieu of live trial testimony is when the opposing party first learns of the issue—whether the opposing party first learns of it pretrial or during trial.

Here, the parties dispute whether McBride's Rule 32(a) objection to Charles's deposition testimony being presented to the jury in lieu of live testimony was waived at several points during the proceedings.

First, the parties disagree as to the nature of their stipulation made to Judge King at the March 6 calendar call. Carnival asserts that McBride outright stipulated to Charles's deposition testimony being presented to the jury. McBride disagrees, noting that Carnival's counsel stated that "if the witness, *despite good service*, does not appear, that the parties would stipulate using his designated testimony." (Emphasis added). Admittedly, the nature of the parties' stipulation is not clear from this record. For example, reviewing the hearing transcript, it seems that McBride had intended to call Charles, given that her counsel raised the issue and specifically

stated that she "ha[d] subpoenaed him." However, Carnival introduced the condition of "good service" into the stipulation. And there is nothing else in the record showing that Charles was at any point subpoenaed or evidencing the specific terms of the parties' stipulation.

Second, the day after the calendar call, Carnival filed a second amended witness list, which changed the designation of Charles's testimony from "[e]xpected to be present at trial" to being "presented by video-deposition." Carnival's second amended witness list, however, was filed only two days before the original trial date of March 9, 2020, i.e., past the thirty-day deadline for such disclosures set forth in Rule 26(a)(3)(B). The trial date was ultimately postponed twice, but McBride asserts that Carnival's disclosure was "patently untimely" and "a nullity" based on the March 9 trial date. But, as Carnival notes, McBride never objected to its filing of the second amended witness list.

But even assuming, without deciding, that McBride did not waive her Rule 32(a) objection either under the parties' stipulation or by not objecting to Carnival's witness list, we conclude that McBride waived her Rule 32(a) objection based on her counsel's actions at trial. We begin by noting "the general rule that a *timely* objection is necessary to bring to the trial court's attention alleged errors in the conduct of the trial." *Jenkins v. Gen. Motors Corp.*, 446

22-13940                Opinion of the Court                17

F.2d 377, 383 (5th Cir. 1971)[2] (emphasis added); *see also Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993) ("Requiring timely objection prohibits counsel from 'sandbagging' the court by remaining silent and then, if the result is unsatisfactory, claiming error." (quoting *Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd on other grounds*, 480 U.S. 1 (1987))).  Indeed, the "principal purpose" of objecting to evidence at trial "is not primarily a matter of building a record for appeal or a tactical maneuver by counsel" but, instead, is for counsel to "bring to the attention of the trial judge evidence that counsel considers inadmissible or prejudicial so that, if there is an error involved, the court has a chance to correct it on the spot." *Saunders v. Chatham Cnty. Bd. of Comm'rs*, 728 F.2d 1367, 1368 (11th Cir. 1984) (per curiam).

At the beginning of the second day of trial, McBride's counsel raised the general issue of "deal[ing] with" Charles's deposition. McBride also filed a written "Notice of Filing Objections to Defendant's Deposition Designations" the same day, which did not contain a Rule 32(a) objection.  After the second day of trial was completed, Judge Gayles had a conference with the parties where he went through the designations for Charles's deposition with both parties, who went through their objections to Charles's deposition and finally agreed upon the designations.  Critically here,

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

when asked by the district court about the deposition, McBride's counsel stated that "there is only one pending objection, and then the rest is a blanket objection." These objections were to portions of Charles's testimony, mainly on the basis of "leading" or "hearsay," and the district court went through the objections with the parties, either sustaining or overruling them. At this point, it was clear that Carnival intended to offer Charles's deposition at trial in lieu of his live testimony, and McBride's counsel could have brought to the district court's attention the issue of whether Charles's deposition testimony would be properly admitted under Rule 32(a).[3]

But at no time did McBride's counsel indicate that McBride had an objection under Rule 32(a) while going through the deposition designations for Charles with Carnival and the district court. *See Jenkins*, 446 F.2d at 383 ("Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances, that can be done." (quoting *Noonan v. Caledonia Gold Mining Co.*, 121 U.S. 393, 400 (1887))). Instead, McBride waited until the moment before Charles's deposition was to be presented on the

---

[3] For example, when the parties began to go through the deposition designations for Charles with the district court, McBride could have raised the Rule 32(a) objection concerning whether Carnival had subpoenaed Charles to the district court. Even if the district court did not rule on the objection then and proceeded with going through the deposition designations for Charles, the issue would have been preserved for the following day of trial—and for appeal.

next day of trial to object, arguing that she could not object until the deposition was offered. In overruling the objection, the district court noted that McBride's counsel had spent over an hour the previous evening going through cross-designations to Charles's deposition without giving any indication that McBride would oppose the admission of the deposition at trial the next day.

We conclude that, based on the actions McBride's counsel took at trial, the district court's ruling was not an abuse of discretion. McBride was well aware by the second day of trial that Carnival intended to present Charles's deposition to the jury and accordingly made objections—both in court and in a written filing—to deposition designations. And when the parties began "dealing with" Charles's deposition the second day of trial, McBride could have informed the district court that she objected to the admission of Charles's deposition in lieu of his live testimony, allowing the district court to address the issue on the spot. *See Saunders*, 728 F.2d at 1368. McBride, however, did not make a Rule 32(a) objection or raise any issue with Charles being subpoenaed when the opportunity arose on the second day of trial, even when questioned by the district court about her objections to Charles's deposition. Thus, by not objecting under Rule 32(a) at this point, McBride led the district court to believe that she had no objection to the admission of Charles's deposition testimony at trial in lieu of Charles's live testimony or that she otherwise was waiving the issue of Charles's live testimony. *See Saunders*, 728 F.2d at 1368.

In light of how the proceedings played out—in particular, McBride's silence on the Rule 32(a) issue while the parties and district court were handling objections to Charles's deposition on the second day of trial—McBride's next-day objection came too late, and McBride cannot now claim on appeal that the district court abused its discretion in overruling that untimely objection. Accordingly, because the district court did not abuse its discretion in overruling McBride's Rule 32(a) objection, we affirm as to this issue.

## B.  The Adequacy of the Jury's Verdict

McBride also argues that the jury's verdict is inadequate because the jury awarded her economic damages "flowing immediately from the fall," e.g., past medical expenses related to emergency room care at Jackson Memorial and ambulance charges she incurred following the wheelchair incident but did not award her past pain and suffering damages. She asserts that, in a personal injury action where liability is established, an award of medical bills without even a nominal award of pain and suffering is inadequate "as a matter of law" and that she is therefore entitled to an entire new trial on damages.

"A district court in its discretion may set aside an excessive or inadequate jury verdict and order a new trial." *Sentry Indem. Co. v. Peoples*, 856 F.2d 1479, 1481 (11th Cir. 1988). Our review of such a motion is "very limited" and may only reverse for an abuse of discretion. *Id.* A verdict is inconsistent or inadequate when there is "no rational, non-speculative way to reconcile two essential jury

22-13940              Opinion of the Court              21

findings."[4] *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015) (alteration adopted) (quoting *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984)).

Under Florida law,[5] "[i]t is generally difficult to find fault with a jury's decision on pain and suffering damages" in a personal injury case, as "there is no objective standard by which to measure them." *Rozar v. R.J. Reynolds Tobacco Co.*, 292 So. 3d 1202, 1207 (Fla. Dist. Ct. App. 2020) (quoting *Odom v. R.J. Reynolds Tobacco Co.*, 254 So. 3d 268, 276 (Fla. 2018)). Indeed, "[d]amages for pain and

---

[4] Carnival argues that McBride failed to raise the issue of an inadequate verdict in a timely manner because she did not raise the objection before the jury was discharged. We have held that "[a] party must object to a verdict as inconsistent before the jury has been dismissed" and that "failure to object to an inconsistent verdict before the jury is excused forfeits the objection." *Reider*, 793 F.3d at 1259; *accord Mason v. Ford Motor Co.*, 307 F.3d 1271, 1274 (11th Cir. 2002). But Carnival did not make this argument in opposing McBride's Rule 59 motion in the district court. Generally, "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)); *see, e.g.*, *United States v. Carter*, 110 F.3d 759, 761 (11th Cir. 1997) (applying this rule to appellees).

[5] At oral argument, we asked the parties whether the proceedings below had been litigated under federal maritime law, Florida law, or a combination of both. The parties were unable to give a clear answer, but in their briefing on McBride's Rule 59 motion and their appellate briefing on the adequacy issue, both parties rely on Florida law in support of their arguments. And Carnival did not argue against the application of Florida law. Accordingly, we will look to Florida law in determining whether the jury's zero-dollar award of pain and suffering damages when it awarded economic damages is inadequate.

suffering are difficult to calculate, have no set standard of measurement, and for this reason are uniquely reserved to a jury for their decision." *Pogue v. Garib*, 254 So. 3d 503, 507 (Fla. Dist. Ct. App. 2018) (quoting *Ortega v. Belony*, 185 So. 3d 538, 539 (Fla. Dist. Ct. App. 2015)). But "the evidence must support a jury's zero-dollar award for it to stand." *Rozar*, 292 So. 3d at 1207. Thus, where "the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law." *Id.* (quoting *Ellender v. Bricker*, 967 So. 2d 1088, 1093 (Fla. Dist. Ct. App. 2007)); *see, e.g.*, *Aymes v. Auto. Ins. Co. of Hartford*, 658 So. 2d 1246, 1247 (Fla. Dist. Ct. App. 1995) (concluding that "the denial of any damages for pain and suffering, despite uncontradicted evidence of pain and the award of all of her medical expenses, resulted in an inadequate verdict as a matter of law" and noting that the defendant did not dispute those facts related to pain); *Sanchez v. Hernandez*, 971 So. 2d 944, 946 (Fla. Dist. Ct. App. 2007) (finding jury's award of noneconomic damages of approximately $1400 "grossly inadequate" and to have "no discernible origin in the record" where even defendant suggested $5000 to $10000 would be appropriate).

While mindful of our limited review standard for a motion for new trial based on an inadequate or inconsistent verdict, we conclude that the district court erred in not granting McBride's motion as to the limited issue of pain and suffering damages relating to the past medical expenses she incurred immediately after the wheelchair incident.

The jury awarded past medical expenses related to emergency room care at Jackson Memorial Hospital and ambulance charges she incurred following the wheelchair incident. The jury did not award even nominal past pain and suffering damages associated with those past medical expenses. But there is uncontradicted evidence in the record that McBride suffered at least *some* pain in the immediate aftermath of the wheelchair incident. For example, McBride and her spouse both testified that McBride was in pain immediately after her fall. Additionally, Dr. Sinnreich—an orthopedic surgeon and Carnival's expert witness—read from McBride's ambulance report that she "complain[ed] of pain to the right shoulder, bilateral knees[,] and back due to a fall." Dr. Sinnreich also testified that, while the incident was a relatively minor trauma, it caused soft tissue injuries that could have lasted up to three months. And Carnival referenced Dr. Sinnreich's testimony in its closing argument at trial.

We also note that Florida courts have reversed and remanded for a new trial on the issue of noneconomic damages when the jury awarded zero noneconomic damages, despite awarding medical expenses, where there was a similar level of uncontradicted evidence on the issue as here. *See, e.g.*, *Rozar*, 292 So. 3d at 1207–08; *Ellender*, 967 So. 2d at 1092–93; *Sanchez*, 971 So. 2d at 945–46. We therefore find that the district court erred in denying McBride's Rule 59 motion solely as to past pain and suffering damages related to the jury's award of past medical expenses related to emergency room care at Jackson Memorial and ambulance charges she incurred following the wheelchair incident.

As to the nature of our remand, however, we decline to order a new trial on damages in their entirety, as McBride suggests we do, given that the jury only awarded $10,543.59—which was the amount the parties agreed covered McBride's medical expenses related to the ambulance and treatment at Jackson Memorial Hospital—and that there is no other reversible error in the jury's verdict or the district court's denial of her motion for new trial. Rather, as some Florida appellate courts have similarly done, we reverse in part the district court's denial of McBride's Rule 59 motion and remand for a new trial limited to the *sole* issue of past pain and suffering damages related to the past medical expenses the jury awarded, i.e., those expenses related to emergency room care at Jackson Memorial Hospital and ambulance charges she incurred following the wheelchair incident. *See, e.g.*, *Rozar*, 292 So. 3d at 1208 (ordering a new trial on the "single issue" of past noneconomic damages but affirming the jury's future damages award). We otherwise affirm the jury's verdict as to: (1) past economic damages and (2) future economic and noneconomic damages.

## IV.    CONCLUSION

To summarize our rulings, we conclude that the district court did not abuse its discretion in allowing Charles's deposition testimony to be presented to the jury. We thus **affirm** as to this issue.

But we conclude that the district court should have granted McBride a new trial on the limited issue of past pain and suffering damages associated with the economic damages she was awarded,

i.e., past medical expenses she incurred from ambulance charges and Jackson Memorial immediately following the wheelchair incident. Accordingly, we **reverse in part** the district court's order denying McBride's Rule 59 motion and its judgment *solely* as to that issue. And we **remand** to the district court for a new trial limited to the *sole* issue of past pain and suffering damages related to the past medical expenses the jury awarded, i.e., those expenses related to emergency room care at Jackson Memorial Hospital and ambulance charges she incurred following the wheelchair incident.

Lastly, we otherwise **affirm** the jury's verdict as to: (1) past economic damages and (2) future economic and noneconomic damages.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS.**

22-13940                Jordan, J. Concurring                    1

JORDAN, Circuit Judge, Concurring.

I join Parts I, II, and III.B of the court's opinion. As to Part III.A, I concur in the judgment.

With respect to Part III.B, I agree with the court that, under Florida law, the jury's award of no damages whatsoever for pain and suffering cannot stand. Ms. McBride testified that she suffered pain from her fall from the wheelchair, and Dr. Sinnreich, Carnival's medical expert, testified that Ms. McBride had sustained soft tissue injuries which could have lasted for up to three months.

As for Part III.A, I too conclude that the district court did not abuse its discretion in allowing Mr. Charles' deposition to be read to the jury. My reasons, however, are somewhat different than those of the court.

Ms. McBride's counsel knew that the stipulation about Mr. Charles' deposition had been announced in open court in March of 2020 before Judge King. Judge Gayles, who presided over the trial after Judge King's recusal, would have had no reason to know about the parties' stipulation or its parameters. Under the circumstances, when the parties dealt with objections to designations from Mr. Charles' deposition, Ms. McBride's counsel should have alerted Judge Gayles about the possible forthcoming objection to the introduction of that same deposition. Although there is not much caselaw concerning the mechanics of Rule 32(a)(4) objections, a number of decisions—in cases admittedly not on all fours—suggest that a party's litigation conduct can affect the viability of its objection to the use of a deposition at trial. Those decisions also indicate

that Judge Gayles acted within the scope of his discretion. *Cf. Battle v. Mem'l Hosp.*, 228 F.3d 544, 553-54 (5th Cir. 2000) (district court did not abuse its discretion in requiring the plaintiffs to use the video deposition of a doctor, despite his availability at trial, due to their "dilatory tactics" earlier in the case); *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir. 1970) (district court did not err in allowing witness' deposition to be read to the jury where the opposing party had said that it would ascertain whether witness was more than 100 miles from the courthouse but did not do so); *Frederick v. Yellow Cab Co.*, 200 F.2d 483, 486 (3d Cir. 1952) (district court did not err in permitting witness' deposition to be read to the jury where proponent indicated that witness was out of town on business several days a week (as he had said in his deposition) and opponent, though objecting to the deposition, did not contradict the proponent's representation). Significantly, Ms. McBride has not pointed to any procedurally similar cases demonstrating that Judge Gayles erred.

Unlike the court, I would not impose a general requirement under Rule 26(a)(3) that a party object in toto to any use of a deposition pursuant to Rule 32(a)(4) as soon as the opposing party indicates that the deposition may be offered at trial. The opposing party may not have any evidentiary objections to the deposition designations offered by the proponent but may be unwilling to stipulate to the deposition's use if the witness is available for trial. And until the deposition is offered at trial under Rule 32(a)(4)(D), it will usually be difficult for the district court to determine whether the proponent was unable to secure the witness' appearance by subpoena. Indeed, the general rule seems to be that the "existence of

22-13940               Jordan, J. Concurring                    3

the condition" for admissibility of the deposition at trial "is a question to be determined by the trial court at the time the deposition is offered in evidence." 8A Richard L. Marcus, Fed. Prac. & Proc. § 2146 (3d ed. & April 2023 update). It is at that time that the proponent of the deposition must demonstrate the witness' unavailability. *See, e.g., Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir. 1987) ("The [party offering the deposition] d[oes] not satisfy his burden by stating merely that he did not know where [the witness] was. The [party's] burden [is] to provide an explanation for the witness's absence."); Jay E. Grenig & Jeffrey S. Kinsler, Handbook of Fed. Civ. Discovery and Disclosures § 7:17 (4th ed. & July 2023 update) ("The party proposing to use the deposition has the burden of establishing that the requirements of Rule 32(a)(4)(D) are satisfied."). As I see things, we should affirm Judge Gayles' admission of Mr. Charles' deposition not because Ms. McBride's objection was untimely under Rule 32(a)(4)(D) but because her counsel misled Judge Gayles the day before into thinking that no such objection was forthcoming.

In closing, I note that there will be a new trial on the issue of Ms. McBride's pain and suffering related to the medical expenses she sustained right after her accident. If Carnival wants to introduce Mr. Charles' deposition at this upcoming trial, it is on notice that it will bear the burden of demonstrating his unavailability under Rule 32(a)(4)(D). And if Ms. McBride is going to object to the use of that deposition, it will behoove her to make her opposition known as soon as possible.